# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

EWA-MARIE RUNDQUIST,

Plaintiff,

v.

VAPIANO SE, *et al.*,

Defendants.

Civil Action No. 09-2207 (BAH)
Judge Beryl A. Howell

## MEMORANDUM OPINION

In this case, an international photographer claims that Vapiano restaurants are illegally exploiting her copyrighted works to achieve their chic look. Plaintiff Ewa-Marie Rundquist alleges that Vapiano restaurants in the United States and around the world are unlawfully displaying her copyrighted photographs as a central part of their décor. The plaintiff initiated this case against three corporations she believes to be responsible for this infringement: Vapiano SE, a European company based in Germany, and Vapiano International, LLC and Vapiano Franchise USA, LLC, both of which are incorporated in the United States.[1] Defendant Vapiano SE moves to dismiss all claims against it on grounds that the Court lacks personal jurisdiction and, in the alternative, moves to dismiss all claims relating to infringement occurring in Vapiano restaurants outside the United States for lack of subject matter jurisdiction and on grounds of *forum non conveniens*. The Court concludes that the plaintiff is entitled to a sixty-day period of jurisdictional discovery to ascertain the facts about what Vapiano SE characterizes as the plaintiff's "guesswork" about the company's contacts with this forum. Vapiano SE's motion to dismiss for lack of personal jurisdiction is therefore denied without

---

[1] The plaintiff invokes the jurisdiction of this Court pursuant to 28 U.S.C. §§ 1331 and 1338(a), for a federal question arising under the U.S. Copyright Act. *See* Am. Compl. ¶ 9.

prejudice.  With regard to allegations concerning infringement occurring outside the United States, the Court grants in part and denies in part Vapiano SE's motion to dismiss for lack of subject matter jurisdiction, holding that the Court does not have subject matter jurisdiction over Count I or Count II of the Amended Complaint to the extent that the counts assert Vapiano SE's direct, contributory, or vicarious liability under the Copyright Act for infringement taking place wholly outside the United States, but allowing plaintiff's other claims under the Copyright Act and foreign copyright laws to proceed.  Finally, the Court denies Vapiano SE's motion to dismiss claims regarding foreign acts of infringement for *forum non conveniens.*

## I.    BACKGROUND

Plaintiff Ewa-Marie Rundquist, a Swedish citizen, is a "highly experienced fashion, lifestyle, and advertising photographer" based in Stockholm, Sweden.  Am. Compl. ¶¶ 2, 4, 12.  According to the Amended Complaint, her work has appeared in numerous well-known magazines, such as *Vogue*, *Elle*, and *Glamour*, and has been featured in advertising campaigns for a number of international brands. *Id.* ¶ 12.

In addition to her fashion and advertising work, the plaintiff's pictures have also appeared in several cookbooks, including a cookbook entitled *La Pizza: The True Story from Naples* (hereinafter "*La Pizza*"). *Id.* ¶ 13.  *La Pizza* contains a number of the plaintiff's "original and unique" photographs of Italian street scenes and Italians eating and cooking pizza (hereinafter the "Protected Photographs"). *Id.* ¶¶ 14-15.  Plaintiff states that she owns these photographs and that they "constitute copyrightable subject matter," which is protected under the Copyright Act and by provisions of the Berne Convention for the Protection of Literary and Artistic Works (hereinafter "Berne Convention"), to which the United States is a signatory.[2]  *Id.* ¶¶ 3, 15, 17.  Every copy of *La Pizza*

---

[2] Plaintiff was a national of Sweden on the date that her protected photographs were first created and first published. *Id.* ¶ 17. Sweden, the United States, and all of the other countries where defendants' Vapiano restaurants are located, are

contains a notice that the plaintiff is the copyright owner of certain photographs appearing in the book and provides the page numbers on which the plaintiff's Protected Photographs appear. *Id.* ¶ 16.

Plaintiff alleges that her Protected Photographs are being used without permission as a "central décor element" in an upscale Italian restaurant chain named Vapiano, which has restaurants located in the United States and around the world. *Id.* ¶¶ 1, 24-25. Specifically, the plaintiff alleges that large mural-sized black and white reproductions of her Protected Photographs appear in all Vapiano restaurants, which have the same décor and a consistent look. *Id.* ¶¶ 23, 25. Plaintiff also alleges that her Protected Photographs appear on Vapiano websites. *Id.* ¶ 28. In addition to using her photographs without authorization, in no instance is the plaintiff referenced as the photographer or owner of the Protected Photographs. *Id.* ¶ 26.

On November 20, 2009, the plaintiff filed a Complaint in this Court against Vapiano SE; Vapiano International, LLC (hereinafter "Vapiano International"); and Vapiano Franchise USA, LLC (hereinafter "Vapiano USA"). The plaintiff alleges that defendant Vapiano SE, a European public corporation based in Germany, is a franchisor that has established sixty Vapiano restaurants in over sixteen countries around the world, and has more than a hundred new restaurants in development. *Id.* ¶¶ 5, 18. Vapiano SE is alleged to direct and control the appearance and other operational aspects of all Vapiano restaurants. *Id.* ¶ 18. Additionally, plaintiff claims that Vapiano SE has ownership interests in many, if not all, Vapiano restaurants. *Id.*

---

signatories to the Berne Convention. Berne Convention for the Protection of Literary and Artistic Works art. 3, Sept. 9, 1886 - Nov. 16, 1988, S. Treaty Doc. No. 99-27, 1161 U.N.T.S. 30 (entered into force Mar. 1, 1989) (hereinafter "Berne Convention"); *see also* Contracting Parties, Berne Convention, WORLD INTELLECTUAL PROPERTY ORGANIZATION, http://www.wipo.int/treaties/en/ShowResults.jsp?lang=en&treaty_id=15 (last visited July 20, 2011). As a citizen of a signatory to the Berne Convention, plaintiff is afforded the protections that copyright laws of other signatories to the Berne Convention provide to their nationals. *See Golan v. Holder*, 609 F.3d 1076, 1080 (10th Cir. 2010) ("The Berne Convention requires each signatory to provide the same copyright protections to authors in other member countries that it provides to its own authors."). Additionally, the Berne Convention does not require the plaintiff to obtain a copyright registration for her photographs from the United States Copyright Office or any other copyright office where defendants' Vapiano restaurants are located as a pre-requisite for copyright protection. Berne Convention art. 5.

The plaintiff also asserts claims against defendants Vapiano International and Vapiano USA, both of which are Delaware limited liability companies with their principle place of business in McLean, Virginia. *Id.* ¶¶ 6, 7. These companies are alleged to be Vapiano SE's affiliates that are controlled by Vapiano SE and act as Vapiano SE's agents with respect to Vapiano restaurants in the United States. *Id.* ¶ 19.

The plaintiff states that the defendants operate six Vapiano restaurants in the United States, including two in the District of Columbia, and are planning to open eighteen more restaurants in other U.S. cities. *Id.* ¶¶ 19-20. The defendants also market, own, operate, license or franchise thirty-five Vapiano restaurants in at least fifteen foreign countries. *Id.* ¶ 21. In all of these restaurants, the plaintiff alleges that the defendants "collectively require and direct . . . prominent[] display [of] Plaintiff's Protected Photographs as a central part of those restaurants' décor." *Id.* ¶ 26.

Prior to initiating this case, the plaintiff claims that on numerous occasions she informed the defendants that she objected to the unauthorized and unlawful use of her photographs. *Id.* ¶ 29. On November 7, 2008 and January 27, 2009, plaintiff, through counsel, advised the defendants that their display of plaintiff's Protected Photographs infringed plaintiff's copyrights and demanded that they immediately cease the reproduction and display of the photographs. *Id.* ¶ 31. The defendants allegedly refused, and continue to display her Protected Photographs in their restaurants. *Id.* ¶ 32.

The plaintiff now asserts the following three causes of action against the defendants for their allegedly infringing copying and display of the Protected Photographs in Vapiano restaurants in the U.S. and abroad and on their websites: (1) direct copyright infringement in violation of the Copyright Act, 17 U.S.C. § 501 *et seq.*, Am. Compl. ¶¶ 35-45; (2) contributory and vicarious copyright infringement in violation of the Copyright Act, *id.* ¶¶ 46-52; and (3) copyright infringement in violation of the copyright laws of fifteen foreign countries (hereinafter "Foreign Copyright Laws"),

*id.* ¶¶ 53-59.[3]  For these alleged unlawful acts, the plaintiff seeks a permanent injunction to enjoin use of her Protected Photographs in Vapiano restaurants and on the defendants' websites, and a monetary judgment, including actual damages and an accounting of the gains and income derived by the defendants from their use of the plaintiff's protected works. Am. Compl., Prayer for Relief, ¶¶ 1-4.

After filing her Complaint on November 20, 2009, the plaintiff amended her pleading on April 22, 2010.[4] Am. Compl., ECF No. 11. Defendants Vapiano International and Vapiano USA answered the Amended Complaint on May 5, 2010. ECF Nos. 12-13.[5] On September 3, 2010, defendant Vapiano SE moved to dismiss the allegations against it for lack of personal jurisdiction, and also moved to dismiss all claims relating to acts of infringement occurring outside the United States for lack of subject matter jurisdiction and for *forum non conveniens*.  Vapiano SE Mot. Dismiss, ECF No. 17.  These motions, which are not joined by defendants Vapiano International or Vapiano USA, are currently pending before the Court.[6]

---

[3] The fifteen countries identified as locations for Vapiano restaurants are: Austria, Croatia, Estonia, Germany, Hungary, the Netherlands, Poland, Romania, Saudi Arabia, Serbia, Sweden, Switzerland, Turkey, the United Arab Emirates, and the United Kingdom. Am. Compl., Ex. 3.

[4] The plaintiff's original Complaint named as defendants Vapiano International, Vapiano USA, and Vapiano AG. Defendants Vapiano International and Vapiano USA waived service of process and filed their Answers to the original complaint on February 4, 2010. ECF Nos. 4-5. On February 23, 2010, pursuant to Local Civil Rule 16.3 and Federal Rule of Civil Procedure 26, the Court ordered the parties to confer and file a joint Meet and Confer Report by March 30, 2010. Order for Meet and Confer Report, ECF No. 8 (Sullivan, J.).  Vapiano AG did not participate in the meet and confer, nor did it contribute to the joint report because it claimed that it was improperly named and served. Pl.'s Mot. Leave to File First Am. Compl., ECF No. 10, at 2. Unbeknownst to the plaintiff, Vapiano AG had converted its corporate form from *Aktiengesellschaft* ("AG"), which refers to a German public corporation, to *Societas Europaea* ("SE"), which refers to a European public corporation. Consent Mot. Extend Deadline to File Rule 26 Scheduling Report, ECF No. 9, at 1.  On March 29, 2010, "in order to avoid protracted motions practice" on whether Vapiano SE was properly served, the plaintiff moved to amend the Complaint to name defendant Vapiano SE in place of Vapiano AG and re-serve the summons and Complaint. Pl.'s Mot. Leave File First Am. Compl., ECF No. 10, at 2.  The Court granted this request by Minute Order on April 22, 2010. Minute Order dated April 22, 2010 (Sullivan, J.).

[5] In their answers, both Vapiano International and Vapiano USA deny that the Court has any jurisdiction outside the United States and that venue is proper in the District of Columbia. Vapiano USA Answer, ECF No. 12, ¶¶ 9-11; Vapiano International Answer, ECF No. 13, ¶¶ 9-11.

[6] Also pending before the Court is plaintiff's Motion to Lift Stay, ECF No. 23. On March 30, 2010, the Court stayed scheduling of the parties' Rule 26(f) conference until "further Order of the Court" because, at that time, Vapiano SE had not entered an appearance.  Minute Order dated March 30, 2010 (Sullivan, J.).  On May 19, 2011, the plaintiff moved to lift this stay, which the defendants opposed due to Vapiano SE's pending motion to dismiss. ECF Nos. 23-25.  Given the

As explained below, Vapiano SE's motion to dismiss for lack of personal jurisdiction is denied because the plaintiff has requested, and is entitled to, a period of discovery regarding Vapiano SE's ties to the District of Columbia prior to the adjudication of this motion. Vapiano SE has also moved to dismiss Counts I and II of the plaintiff's Amended Complaint to the extent that these counts allege infringement in foreign nations, and Count III for lack of subject matter jurisdiction. The Court denies in part and grants in part this motion, dismissing only the allegations contained in Counts I and II of the Amended Complaint that assert Vapiano SE's direct, contributory and vicarious liability under the Copyright Act for the alleged display of Protected Photographs in foreign Vapiano restaurants. The Court maintains jurisdiction to hear such claims against Vapiano International and Vapiano USA. The Court also maintains jurisdiction to hear plaintiff's claims in Count III of the Amended Complaint, which allege that all of the defendants violated the copyright laws of foreign countries. The Court further denies Vapiano SE's motion to dismiss claims concerning foreign infringement on grounds of *forum non conveniens*.

## II.    VAPIANO SE'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

Defendant Vapiano SE argues that it should be dismissed from this case because it does not have the requisite contacts in the District of Columbia to support the Court's exercise of personal jurisdiction. Specifically, Vapiano SE argues that three salient facts defeat exercise of personal jurisdiction by this Court: (1) Vapiano SE is a European corporation headquartered in Germany that maintains no presence and solicits no business in the District of Columbia, (2) that Vapiano SE has no ownership or control of the two U.S.-based defendants to which it merely franchises certain intellectual property rights, and (3) Vapiano SE did not supply or require the display in the District of

Court's resolution of this motion in the instant opinion, the stay imposed by the Court's March 30, 2010 Minute Order is lifted and the parties are directed to file a Meet and Confer report, in compliance with paragraph 5 of the Court's Standing Order, by August 10, 2011.

Columbia of the Protected Photographs. The plaintiff vigorously disputes that activities by Vapiano SE do not support personal jurisdiction. As explained below, the Court denies Vapiano SE's motion to dismiss, without prejudice, to allow the plaintiff a period of discovery regarding defendant Vapiano SE's ties to the District.

### A. Standard of Review

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of "establishing a factual basis for the [Court's] exercise of personal jurisdiction over the defendant." *Crane v. N.Y. Zoological Soc'y,* 894 F.2d 454, 456 (D.C. Cir. 1990) (citing *Reuber v. United States,* 750 F.2d 1039, 1052 (D.C. Cir. 1984), *overruled on other grounds by Kauffman v. Anglo-American School of Sofia,* 28 F.3d 1223 (D.C. Cir. 1994)). To meet this burden, the plaintiff need only make a prima facie showing that the Court has personal jurisdiction. *See Mwani v. bin Laden*, 417 F.3d 1, 6 (D.C. Cir. 2005); *Walton v. Bureau of Prisons*, 533 F. Supp. 2d 107, 112 (D.D.C. 2008). "The plaintiff, however, cannot rest on bare allegations or conclusory statements and must allege specific facts connecting each defendant with the forum." *GTE New Media Servs., Inc. v. Ameritech Corp.,* 21 F. Supp. 2d 27, 36 (D.D.C. 1998); *see also Second Amendment Found. v. U.S. Conf. of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001); *Moore v. Motz*, 437 F. Supp. 2d 88, 91 (D.D.C. 2006).

Unlike a motion to dismiss under Rule 12(b)(6), the court "may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction." *Jerome Stevens Pharms., Inc. v. FDA,* 402 F.3d 1249, 1253 (D.C. Cir. 2005). The court "may receive and weigh affidavits and any other relevant matter to assist it in determining the jurisdictional facts." *United States v. Philip Morris Inc.*, 116 F. Supp. 2d 116, 120 n.4 (D.D.C. 2000) (internal quotation marks and citation omitted); *see also Capital Bank Int'l, Ltd. v. Citigroup, Inc.*, 276 F. Supp. 2d 72, 74

(D.D.C. 2003). However, all "factual discrepancies appearing in the record must be resolved in favor of the plaintiff." *Crane,* 894 F.2d at 456 (citing *Reuber,* 750 F.2d at 1052); *see also IMark Mktg. Servs., LLC v. Geoplast S.p.A.,* 753 F. Supp. 2d 141, 147-48 (D.D.C. 2010). Indeed, the plaintiff's factual assertions in the Complaint are "presumed to be true unless directly contradicted by affidavit." *DSMC, Inc. v. Convera Corp.*, 273 F. Supp. 2d 14, 20 (D.D.C. 2002).

### B. Discussion

Personal jurisdiction is "an essential element of the jurisdiction of a district court, without which the court is powerless to proceed to an adjudication." *Jankovic v. Int'l Crisis Grp.*, 494 F.3d 1080, 1086 (D.C. Cir. 2007) (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999)). For the Court to exercise personal jurisdiction over Vapiano SE, this defendant must maintain contacts with the District of Columbia sufficient to support either general jurisdiction or specific jurisdiction under the District of Columbia's long-arm statute, D.C. Code § 13-423 (2001). *See Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414-16 (1984).

### 1. The Court Does Not Have General Jurisdiction Over Defendant Vapiano SE

The Court may maintain general personal jurisdiction over a foreign corporation, pursuant to D.C. Code § 13-334(a),[7] if the corporation is "doing business" in the District of Columbia. *FC Inv. Group LC v. IFX Markets, Ltd.*, 529 F.3d 1087, 1091 (D.C. Cir. 2008). If general personal jurisdiction exists, the defendant must appear and answer for any claims, even ones unrelated to its ties to the jurisdiction. "[T]he reach of 'doing business' jurisdiction under [D.C. Code] § 13-334(a) is coextensive with the reach of constitutional due process," which allows general jurisdiction over a foreign corporation only if "the defendant's business contacts with the forum are 'continuous and

---

[7] D.C. Code § 13-334(a) specifically addresses service of process for foreign corporations. The D.C. Court of Appeals has held, however, that under the statute "a foreign corporation which carries on a consistent pattern of regular business activity within the jurisdiction is subject to the general jurisdiction of our courts, upon proper service, and not merely for suits arising out of its activity in the District of Columbia." *AMAF Int'l Corp. v. Ralston Purina Co.,* 428 A.2d 849, 850 (D.C.1981); *see also FC Inv. Grp. LC,* 529 F.3d at 1091-92.

systematic.'" *Gorman v. Ameritrade Holding Corp.,* 293 F.3d 506, 510 (D.C. Cir. 2002) (citing

*Helicopteros,* 466 U.S. at 415, and *Hughes v. A.H. Robins Co., Inc.,* 490 A.2d 1140, 1148 (D.C.

1985)); *see also Roz Trading, Ltd. v. Zeromax Grp., Inc.,* 517 F. Supp. 2d 377, 383 (D.D.C. 2007).

     The plaintiff alleges in her Amended Complaint that the Court has personal jurisdiction over

all the defendants, not just Vapiano SE, "because Defendants are doing business in this District

through their ownership, licensing, franchising, operation, marketing and/or control of Vapiano

restaurants in this District." Am. Compl. ¶ 10. The Amended Complaint further asserts that "Vapiano

SE does business in this District individually and through its agents Vapiano International and

Vapiano [USA], which it controls." *Id.* Vapiano SE "is also subject to jurisdiction because it solicits

franchise business in this District through various mediums including the Vapiano Websites." *Id.*

     Defendant Vapiano SE correctly notes, however, that pursuant to District of Columbia law,

general jurisdiction over a foreign corporation requires personal service under D.C. CODE § 13-

334(a). Vapiano SE Reply Mem., ECF No. 22, at 4-5. In this case, the plaintiff served Vapiano SE

under the Hague Service Convention, rather than via personal service. *See* Pl.'s Mot. Leave File First

Am. Compl., ECF No. 10, at 2; Vapiano SE's Unopposed Mot. Extend Time to Answer, ECF No 14,

at 1. "Regardless of whether defendants were 'doing business in the District,' plaintiff may not

invoke Section 13–334(a) as the basis for personal jurisdiction against a foreign corporation unless

the corporation has been served within the District of Columbia." *Rossmann v. Chase Home Fin.,*

*LLC*, No. 10-cv-0977, 2011 WL 1088014, at *2 (D.D.C. Mar. 25, 2011). Accordingly, jurisdiction

may only be exercised under the local long-arm statute, D.C. CODE § 13-423(a). *See Gorman,* 293

F.3d at 514 ("Where the basis for obtaining jurisdiction over a foreign corporation is § 13–334(a), . . .

a plaintiff who serves the corporation by mail outside the District is 'foreclosed from benefitting from

[the statute's] jurisdictional protection.'" (quoting *Everett v. Nissan Motor Corp.*, 628 A.2d 106, 108

(D.C. 1993)); *Kroger v. Legalbill.com LLC*, No. 04-cv-2189, 2005 U.S. Dist. LEXIS 42885 at *14-15 (D.D.C. Apr. 7, 2005).

Even if Vapiano SE were personally served in compliance with D.C. CODE § 13-334(a), the record does not establish that Vapiano SE is doing business in the District of Columbia. In support of its motion to dismiss, defendant Vapiano SE provides two declarations from its chief executive officer, Mirko Silz, who states that Vapiano SE has never had any "assets or operations in the District of Columbia or anywhere else in the United States" nor does it have any "ownership interest in any business entity formed in the District of Columbia or anywhere else in the United States." Def. Vapiano SE's Mot. Dismiss, ECF No. 19, Mirko Silz Decl. (hereinafter "Silz Decl. I"), ¶ 2; *see also* Def. Vapiano SE's Reply, ECF No. 22, Mirko Silz Decl. Further Supp. Mot. Dismiss (hereinafter "Silz Decl. II"), ¶¶ 2-3. Vapiano SE acknowledges that it maintains a licensor-licensee relationship with Vapiano International, which covers "intellectual property relating to the restaurant business and the goodwill associated with that intellectual property," but asserts that this license was set for a flat fee "irrespective of whether any restaurant is operated, and the fee was paid prior to the opening of any restaurant in the District of Columbia." Silz Decl. I, ¶¶ 4, 8. The declaration further states that Vapiano SE has "no legal relationship" with Vapiano USA, which is a sub-licensee of Vapiano International. *Id.* ¶ 6. Additionally, with regard to Vapiano SE's alleged solicitation of franchises in D.C. through its website, Mr. Silz declares that "Vapiano SE does not solicit franchisees for the United States since it has granted an exclusive license to Vapiano International LLC." *Id.* ¶ 12.

The plaintiff has failed to comply with the procedural requirements of D.C. CODE § 13-334. Additionally, while the plaintiff is afforded every favorable factual inference, the record currently before the Court does not support the plaintiff's claim that Vapiano SE is conducting "continuous and systematic" business in the District of Columbia. *See Gorman,* 293 F.3d at 510; *see also* D.C. CODE

§ 13-334. The plaintiff effectively concedes that general jurisdiction is not proper in her opposition to Vapiano SE's motion by arguing only that the Court should exercise jurisdiction pursuant to the District of Columbia's long-arm statute. Consequently, if personal jurisdiction over Vapiano SE exists, it must be based on defendant Vapiano SE's specific contacts with the District of Columbia.

### 2. The Record Does Not Currently Support Specific Jurisdiction Over Defendant Vapiano SE

To establish specific personal jurisdiction, the Court must assess whether jurisdiction is applicable under the District of Columbia's long-arm statute, D.C. CODE § 13-423, and must also determine whether jurisdiction satisfies the requirements of due process. *See United States ex rel. Richard F. Miller, v. Bill Harbert Int'l Constr., Inc.*, 608 F.3d 871, 887 (D.C. Cir. 2010); *GTE New Media Servs. Inc. v. BellSouth Corp.,* 199 F.3d 1343, 1347 (D.C. Cir. 2000). The plaintiff asserts that jurisdiction is proper under D.C. CODE § 13–423(a)(1), which provides for the exercise of personal jurisdiction over a defendant "who acts directly or by an agent, as to a claim for relief arising from the person's . . . transacting any business in the District of Columbia."[8] This subsection of the long-arm statute is applicable when three requirements are satisfied: (1) the defendant must have transacted business in the District; (2) the plaintiff's claims must have arisen from the business transacted in the District; and (3) the defendant must have minimum contacts with the District such that exercise of personal jurisdiction would not offend "traditional notions of fair play and substantial justice." *Cellutech, Inc. v. Centennial Cellular Corp.*, 871 F. Supp. 46, 48 (D.D.C. 1994) (quoting *Dooley v. United Techs. Corp.,* 786 F. Supp. 65, 71 (D.D.C. 1992)). Section (a)(1)'s "transacting any business"

---

[8] The plaintiff relies exclusively on this provision of the District of Columbia's long-arm statute when arguing that personal jurisdiction over Vapiano SE is proper. The Court therefore only assesses personal jurisdiction under this subsection. Plaintiff does not rely on D.C. CODE § 13-423(a)(3), which allows for jurisdiction when a claim arises from a defendant "causing tortious injury in the District of Columbia by an act or omission in the District of Columbia." *Cf. Blue Ribbon Pet Prods., Inc. v. Rolf C. Hagen (USA) Corp.,* 66 F. Supp. 2d 454, 460 (E.D.N.Y. 1999) (court may exercise personal jurisdiction over foreign defendant in copyright infringement action since "merely offering one copy of an offending work for sale in New York, even if no sale is consummated, constitutes tortious conduct sufficient for long-arm jurisdiction" under New York's long-arm statute).

clause is interpreted to be coextensive with the Constitution's due process requirements, and thus the statutory and constitutional concerns merge into a single inquiry. *Mwani*, 417 F.3d at 9 n.8 (quoting *Hummel v. Koehler,* 458 A.2d 1187, 1190 (D.C.1983)); *GTE New Media Servs. v. BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000). In the present case, the Court need not address the second and third requirements, namely, whether plaintiff's claims arise from Vapiano SE's contacts with the District and whether this defendant has sufficient contacts with the forum, because the current record does not establish that Vapiano SE transacts business in the District of Columbia.

The plaintiff proffers a number of arguments in support of her contention that the Court may exercise personal jurisdiction over Vapiano SE because it "transacts business" in the District of Columbia. These arguments are unpersuasive. The Court addresses each *seriatim*.

### a. The Record Does Not Support Plaintiff's Claim That Vapiano SE Owns Or Controls Vapiano Restaurants In The District of Columbia

The plaintiff contends that Vapiano SE "owns, controls, or operates" two Vapiano restaurants in the District of Columbia. Pl.'s Opp'n Vapiano SE's Mot. Dismiss, ECF No. 21, (hereinafter "Pl.'s Opp'n Mem."), at 16; Am. Compl. ¶¶ 18, 19. The defendant's two declarations state that Vapiano SE "operates no restaurants in the U.S.A." and that, aside from the flat-fee license with Vapiano International, it "has no control over [defendants Vapiano International or Vapiano USA] or any of their restaurants in the U.S.A." Silz Decl. II, ¶¶ 2-3. Moreover, Vapiano SE avers that it earns "no income . . . based on the operation of any restaurant in [D.C.]" and has imposed "no requirement for the use of any photographs in Vapiano restaurants." Silz Decl. I, ¶¶ 9-10.

Nevertheless, the plaintiff argues that the Court should deem Vapiano SE to be transacting business in D.C. because (1) "numerous Vapiano press releases maintained by Vapiano SE on its website . . . plainly state that the Washington, D.C. Vapiano restaurants are 'corporately owned'" and these press releases create a factual discrepancy which must be resolved in her favor; and (2) even if

the Court accepts the defendant's representations, Vapiano SE's licensor-licensee relationship with Vapiano International is sufficient for personal jurisdiction. Pl.'s Opp'n Mem., at 16.

The press releases supplied by the plaintiff to the Court are screenshots from Vapiano International's website, as indicated at the top and bottom of the webpages, and not from Vapiano SE's website. *See* Pl.'s Opp'n Mot. Dismiss, Ex. 2 (press releases dated Mar. 18, 2008; Jan. 2, 2008; Nov. 29, 2007). The "corporately owned" phrase contained in these releases therefore implies that the referenced corporate owner is Vapiano International, not Vapiano SE. The press releases, at best, are ambiguous as to the actual corporate owner and in any event do not, standing alone, create a factual discrepancy with Vapiano SE declarations flatly denying ownership or control of the restaurants located in the District of Columbia.

Regarding Vapiano SE's licensor-licensee agreement, Vapiano SE states that it granted Vapiano International an exclusive license to operate restaurants in the United States and, pursuant to this license, two restaurants were opened in the District of Columbia. Plaintiff argues that the existence of a licensor-licensee relationship is enough to establish that Vapiano SE is transacting business in the District of Columbia. This argument is incorrect. On the contrary, "the mere fact that a franchisor has franchisees in a particular state does not subject it to that state's jurisdiction." *Santora v. Starwood Hotel and Resorts Worldwide, Inc.*, 580 F. Supp. 2d 694, 700 (N.D. Ill. 2008) (internal citation omitted); *accord Richard v. Bell Atl. Corp.*, 946 F. Supp. 54, 69 (D.D.C. 1996) ("[A] parent-subsidiary relationship alone is insufficient to impute the subsidiary's contacts with the District to the parent, unless (a) the parent and subsidiary 'are not really separate entities,' or (b) the parent and subsidiary have an agency relationship such that the 'local subsidiary's contacts can be imputed to the foreign parent,'" quoting *I.A.M. Nat'l Pension Fund, Ben. Plan A v. Wakefield Indus., Inc., Div. of Capehart Corp.*, 699 F.2d 1254, 1259 (D.C. Cir. 1983)).

In *Burger King Corp. v. Rudzewicz,* 471 U.S. 462 (1985), the Supreme Court held that personal jurisdiction over a Michigan-based franchisee in the franchisor's home forum of Florida did not violate the Due Process Clause because the franchisee "deliberately reached out beyond Michigan and negotiated with a Florida corporation for the purchase of a long-term franchise and the manifold benefits that would derive from affiliation with a nationwide organization." *Id.* at 479-80 (internal citation and quotations omitted). The Court clearly required more contacts with the forum than just a contractual franchise agreement to sustain exercise of personal jurisdiction. Indeed, the D.C. Circuit has noted that personal jurisdiction may be proper when a franchise agreement accomplishes a "virtual integration of the parties' businesses," and, as in *Burger King*, the franchisee "lack[s] any identity apart from that of the [franchisor]" and was only a "mere outpost of [the franchisor]." *Health Commc'ns, Inc. v. Mariner Corp.*, 860 F.2d 460, 463 (D.C. Cir. 1988). While the plaintiff alleges that such a relationship exists between Vapiano SE and the other defendants, Vapiano SE's declarations aver that it exerts no control over the defendants aside from the licensing of certain intellectual property.

The plaintiff cites *Kutka v. Temporaries, Inc.*, 568 F.Supp. 1527 (S.D. Tex. 1983), to support her position that authorization and establishment of a franchise in the forum state is sufficient for exercise of personal jurisdiction. In *Kutka*, however, the court exercised personal jurisdiction, pursuant to the Texas long-arm statute, because the defendant franchisor specifically authorized the establishment of a franchise in Texas and continued to receive franchise fees from the franchisee. *Id.* at 1532. The facts in *Kutka* are distinguishable from the case currently before the Court. Vapiano SE declares that it entered into a flat-fee license with Vapiano International, granting Vapiano International an exclusive license to use its intellectual property in the United States. This agreement, according to Vapiano SE, does not specify the location of any Vapiano restaurant, including in the

District of Columbia, and, by the nature of the flat-fee arrangement, Vapiano SE asserts that it receives no income stemming from the local restaurants' operation.

The plaintiff's reliance on *CutCo Industries, Inc. v. Naughton*, 806 F.2d 361 (2d Cir. 1986), and *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55 (2d Cir. 1985), are likewise unavailing. Both of these cases involved personal jurisdiction over a franchisee in the franchisor's home state and premised personal jurisdiction on the franchisee's repeated contacts and business relationship with the franchisor. By contrast, Vapiano SE claims to be "a stranger to the franchise relationship" between the other two defendants, Def. Vapiano SE Reply, at 8, and to have no involvement or income from their operations. The mere fact that Vapiano SE has a contractual franchise relationship with one of the co-defendants is not enough to sustain the exercise of personal jurisdiction. *See Exponential Biotherapies, Inc. v. Houthoff Buruma N.V.*, 638 F. Supp. 2d 1, 7-9 (D.D.C. 2009) ("Where the contract was neither made nor performed in the District, and no services were provided or to be provided here, the contract does not justify the exercise of personal jurisdiction over the non-resident defendant.") (internal quotations omitted).

### b. The Record Does Not Establish That Vapiano SE Transacts Business In The District Of Columbia Through Its Website

The plaintiff contends that Vapiano SE also transacts business in the District of Columbia through its website, www.vapiano.com. The Court finds this argument unpersuasive.

To determine whether the Court may exercise personal jurisdiction based on a defendant's Internet-related contacts with the District of Columbia, the Court focuses on the defendant's use of the Internet to solicit or transact business with users in the District. *See GTE New Media Servs.*, 199 F.3d at 1349 ("[P]ersonal jurisdiction surely cannot be based solely on the ability of District residents to access the defendants' websites, for this does not by itself show any persistent course of conduct by the defendants in the District."); *see also Gorman*, 293 F.3d at 510-11; *Arista Records, Inc. v.*

15

*Sakfield Holding Co. S.L.*, 314 F. Supp. 2d 27, 31 (D.D.C. 2004). Courts look to the level and quality of the commercial activity that an entity conducts over the Internet, and focus particularly on the level of interactivity of the websites at issue. *Lewy v. Southern Poverty Law Center, Inc.,* 723 F. Supp. 2d 116, 124-25 (D.D.C. 2010); *Doe I v. State of Israel*, 400 F. Supp. 2d 86, 121 (D.D.C. 2005) ("[T]he D.C. Circuit distinguished between 'passive' and 'interactive' websites, and stated that the former will not, without more, support personal jurisdiction," citing *GTE New Media Servs.,* 199 F.3d at 1348).

The plaintiff argues that defendant Vapiano SE's website is interactive because it allows customers to place meal orders with Vapiano restaurants, including with those located in the District of Columbia. Through this feature, according to the plaintiff, Vapiano SE "specifically targets District residents with its website." Pl.'s Opp'n Mem., at 17. Additionally, the plaintiff argues that Vapiano "uses [its] website to solicit franchisees from the District" by offering "significant and detailed information for interested parties" and by displaying press releases that discuss the restaurant brand's expansion and success. *Id.*

At the outset, Vapiano SE concedes that its website provides access to the website of defendant Vapiano International. Vapiano SE's website instructs visitors first to select their country of origin. If the United States is selected, "the link takes you to pages supplied by Vapiano International LLC, as can be seen by the copyright notice at the bottom of the pages." Silz Decl. I, ¶ 12. Despite the "click through" access from Vapiano SE's site to Vapiano International's site, Vapiano SE states that "[t]here is no possibility of conducting a business transaction with Vapiano SE through its website [because] [a]ny online ordering of food from a restaurant in the U.S.A. is of course a transaction with the company that operates that restaurant." Silz Decl. II, ¶ 7. The meal

ordering functionality for restaurants based in the United States appears to be on the website run by Vapiano International, not Vapiano SE.

Vapiano SE also asserts that it "does not solicit franchisees for the United States since it has granted an exclusive license to Vapiano International LLC." Silz Decl. I, ¶ 12. Any information concerning franchising opportunities in the United States is found on Vapiano International's website and "any communication on the subject goes to Vapiano International LLC." Silz Decl. II, ¶ 8. Again, Vapiano SE glosses over the fact that its website gives direct and guided access to its franchisees' website, which is reflective of the corporate affiliation, but is insufficient to show Vapiano SE's direct transaction of business in the District.

### c. The Record Does Not Establish That Vapiano SE Transacts Business In The District Through Promotion Of Vapiano Restaurants In The District Of Columbia

To support her contention that personal jurisdiction is proper, the plaintiff also argues that Vapiano SE transacts business in the District by "promot[ing] Vapiano and the décor of their Vapiano restaurants and direct[ing] that promotion at residents of the District." Pl.'s Opp'n Mem., at 18; Am. Compl. ¶ 24. Specifically, the plaintiff cites Vapiano SE's issuance of press releases from the District of Columbia discussing "Vapiano's food, ambience, success, and expansion." Pl.'s Opp'n Mem., at 18. According to the plaintiff, such advertisements "directed at District residents, are sufficient to confer personal jurisdiction, especially when combined with other contacts with the District." *Id.* This contention is incorrect.

As a preliminary matter, as stated earlier, the plaintiff provided as exhibits to her opposition papers the referenced press releases in the form of screenshots allegedly taken from Vapiano SE's website. Pl.'s Opp'n Mot. Dismiss, ECF No. 21, Ex. 2. While these screenshots are accessible by clicking through Vapiano SE's website, the press releases reside on Vapiano International's website,

and are clearly marked as such on the top and the bottom of the webpages. There is no indication that these press releases were issued by Vapiano SE. That said, even if the press releases were issued by Vapiano SE, they would be insufficient to establish personal jurisdiction.

To explain why the plaintiff's argument is unsuccessful, the Court need only reference the two cases the plaintiff herself cites as the primary support for her contention that Vapiano SE's press releases permit exercise of personal jurisdiction. In *Heroes, Inc. v. Heroes Foundation*, 958 F. Supp. 1 (D.D.C. 1996), the court found that the defendant 'transacted business' in the District of Columbia because an advertisement urging contributions to the defendant was placed by a third-party in the *Washington Post*. *Id.* at 3. Personal jurisdiction was proper because "the defendant knew the advertisement was placed, approved of it, and received publicity and substantial contributions as a result of it." *Id.* In reaching this conclusion, however, the court distinguished a line of cases "involv[ing] advertisements placed in national or international publications which happened to circulate within the forum." *Id.* The facts in *Heroes* "involve[d] an advertisement placed specifically in the forum's local newspaper, not in a national newspaper or trade publication which happens to circulate there. The distinction is significant." *Id.*

Similarly, in *Shoppers Food Warehouse v. Moreno*, 746 A.2d 320 (D.C. 2000), the court held that personal jurisdiction was proper because the defendant had "plac[ed] pages of large, illustrated advertisements often in bold letters, with shopping incentives, in the District's major circulation newspaper, the *Washington Post*, [and thus] obviously solicited customers from the District for their stores in Maryland and Virginia, clearly 'with the expectation' that District residents would purchase products sold in those stores." *Id.* at 331.

Both *Heroes, Inc*. and *Shoppers* are plainly distinguishable from the case currently before the Court. Even if Vapiano SE issued the referenced press releases, it did not actively advertise in the

District of Columbia, either on its website or through local newspapers, nor did the press releases specifically target District of Columbia residents as opposed to potential customers located elsewhere in the United States and around the world. Given that there is no indication that Vapiano SE issued press releases targeted specifically at District residents, the general promotion on websites and through press releases of Vapiano restaurants and their décor does not establish that Vapiano SE transacts business in the District.

### d. Vapiano SE's Other Contacts With The District Of Columbia Are Not Sufficient To Establish That It Transacts Business In The District

Finally, the plaintiff argues that Vapiano SE transacts business in the District because it (1) "sought out contact with the District" by entering into a legal relationship with the defendants; (2) has an "ongoing contractual relationship" with the defendants controlling the Vapiano restaurants located in the District of Columbia; (3) has executives who have travelled to the District; and (4) receives monthly franchise fees and royalties from the operation of the D.C. Vapiano restaurants. Pl.'s Opp'n Mem., at 18-21. Each of plaintiff's allegations, however, is either refuted by Vapiano SE through its declarations, or is otherwise insufficient to sustain personal jurisdiction.

First, the plaintiff states that Vapiano SE "sought out contact with the District" by engaging with the other defendants to open restaurants in the forum. Through the declarations of its chief executive officer, Vapiano SE asserts that it granted Vapiano International an exclusive license to establish restaurants in the United States and "has no control over [Vapiano International or Vapiano USA] or any of their restaurants in the U.S.A." Silz Decl. II, ¶ 3. Moreover, the license fee was "set irrespective of whether any restaurant is operated." Silz Decl. I, ¶ 8. Thus, as a factual matter, the plaintiff's assertion that Vapiano SE "sought out contact with the District" is undermined by the sworn declaration that Vapiano SE has no control over the U.S-based defendants and where,

presumably, restaurants in the United States are located. There is currently no evidence in the record that would support plaintiff's claim.

Second, the plaintiff asserts that Vapiano SE's ongoing contractual relationship with Vapiano International and Vapiano USA is also sufficient to demonstrate its "significant contacts" with the District. Specifically, the plaintiff states that Vapiano SE "maintains a close relationship with its franchisees, offering ongoing training and oversight" and requires "that they slavishly replicate the décor of its German locations, including the use of the Plaintiff's Protected Photographs." Pl.'s Opp'n Mem., at 19. This factual allegation, again, is refuted by Vapiano SE's declarations, which state that it imposes "no requirement for the use of any photographs in Vapiano restaurants" and, aside from the license between Vapiano SE and Vapiano International regarding the use of certain intellectual property and goodwill, it "has no other involvement with the operation of any Vapiano restaurants in the United States." Silz Decl. I, ¶¶ 4, 6, 10. Notably, the contract between Vapiano SE and Vapiano International has not been provided to the Court or to the plaintiff. Consequently, the specific intellectual property rights licensed to Vapiano International under that contract, as well as the scope and conditions for use of those rights, are unknown. More to the point, how that license agreement may affect the operations of Vapiano restaurants in this forum and key issues concerning the choice of décor cannot be fully assessed. The current record before the Court is simply insufficient to support personal jurisdiction based on the alleged relationship between Vapiano SE and its franchisee.

Third, the plaintiff argues that business travel by Vapiano SE's executives to the District is sufficient to demonstrate that personal jurisdiction is warranted. According to the plaintiff, "Vapiano SE's President and original founder, lives and works in the District area," and has been quoted in press releases issued from the District of Columbia. Pl.'s Opp'n Mem., at 20. Additionally, in April

2007, other Vapiano SE executives traveled to the "District metropolitan area" for the opening of the first Vapiano restaurant in the United States. *Id.* Assertions of visits to the general "District area" and the "District metropolitan area" could mean contacts with Virginia or Maryland, not contacts with the District of Columbia at all.

Finally, the plaintiff argues that jurisdiction is proper because Vapiano SE receives monthly franchise fees from Vapiano restaurants in the District and cites as support a sample franchise agreement the plaintiff allegedly found on Vapiano SE's website. Vapiano SE, however, maintains that it entered into a "flat license fee" with Vapiano International, which "has different financial terms from those offered today for other countries." Silz Decl. I, ¶ 8; Silz Decl. II, ¶ 5.[9] Under this agreement, "[t]here is no fee paid to Vapiano SE by either of the other defendants based on the operations of any restaurant in the District of Columbia." Silz Decl. II, ¶ 5; *see also* Silz Decl. I, ¶ 9. Vapiano SE carefully couched its declarations about its financial arrangement with the other two defendants, and does not, for example, deny that it receives any money on a continuing basis from the other two defendants under the franchise agreement. Without more evidence regarding the nature of the financial arrangement between the defendants, however, the Court cannot justify the exercise of personal jurisdiction.

### 3. The Plaintiff Is Entitled To A Period Of Jurisdictional Discovery

The record currently before the Court does not support the exercise of general personal jurisdiction or jurisdiction pursuant to D.C.'s long-arm statute over Vapiano SE. The plaintiff requests that "[i]f any doubts remain about whether there is personal jurisdiction over Vapiano SE, then Plaintiff should be permitted jurisdictional discovery on the question of personal jurisdiction."

---

[9] The franchise agreement the plaintiff supplies as an exhibit to the Court was issued by Vapiano International, not Vapiano SE. Pl.'s Opp'n Mot. Dismiss, ECF No. 21, Ex. 1.

Pl.'s Opp'n Mem., at 25. Jurisdictional discovery is warranted in this case, and thus the Court will allow the plaintiff a sixty-day period of discovery regarding Vapiano SE's ties to this district.

In cases where a party's contacts with the jurisdiction are unclear and the record before the court is "plainly inadequate," courts have allowed for a discovery period within which to gather evidence to support jurisdiction. *See GTE New Media Servs.*, 199 F.3d at 1351-52 (reversing lower court's finding of personal jurisdiction, but stating that "[t]his court has previously held that if a party demonstrates that it can supplement its jurisdictional allegations through discovery, then jurisdictional discovery is justified."). "This Circuit's standard for permitting jurisdictional discovery is quite liberal," *Diamond Chem. Co. v. Atofina Chems., Inc.,* 268 F. Supp. 2d 1, 15 (D.D.C. 2003), and jurisdictional discovery is available when a party has "at least a good faith belief" that it has personal jurisdiction. *Caribbean Broad. Sys., Ltd. v. Cable & Wireless PLC*, 148 F.3d 1080, 1090 (D.C. Cir. 1998). "Jurisdictional discovery, however, is justified only if the plaintiff reasonably demonstrates that it can supplement its jurisdictional allegations through discovery" and "mere conjecture and speculation is not enough." *Exponential Biotherapies,* 638 F. Supp. 2d at 11-12 (internal quotations and citations omitted).

Courts have permitted discovery even when a party has failed to establish a *prima facie* case of personal jurisdiction. *See GTE New Media Servs.*, 199 F.3d at 1351-52 ("[A]s the record now stands, there is absolutely no merit to [plaintiff]'s bold claim that the parent companies and subsidiaries involved in this lawsuit should be treated identically. Jurisdictional discovery will help to sort out these matters."); s*ee also In re Vitamins Antitrust Litig.*, 94 F. Supp. 2d 26, 35 (D.D.C. 2000) (discussing *GTE New Media Servs.* and stating that "the D.C. Circuit held that although plaintiffs had failed to establish a prima facie case of personal jurisdiction and the court was unable to tell whether jurisdictional discovery would assist GTE on this score, plaintiffs were entitled to pursue

[discovery].").  Faced with the prospect of dismissal, a plaintiff "is entitled to reasonable discovery, lest the defendant defeat the jurisdiction of a federal court by withholding information on its contacts with the forum." *El-Fadl v. Cent. Bank of Jordan*, 75 F.3d 668, 676 (D.C. Cir. 1996) (internal quotation and citation omitted), *abrogated on other grounds by Samantar v. Yousuf*, 130 S.Ct. 2278 (2010); *see also Humane Soc'y of the U.S. v. Amazon.com, Inc.*, No. 07-cv-623, 2007 U.S. Dist. LEXIS 31810, at *10 (D.D.C. May 1, 2007).

While the record currently before the Court does not support the exercise of personal jurisdiction over Vapiano SE, the plaintiff states that she could supplement her jurisdictional allegations by obtaining evidence of the legal relationship between Vapiano SE and the other defendants, including "the terms of any licensing, franchising or similar agreements." Pl.'s Opp'n Mem., at 26. Moreover, the plaintiff states that she could obtain greater information regarding "the parties involved in and the circumstances regarding the decision-making process that led to the unauthorized use of Plaintiff's Protected Photographs as a part of the décor of the first and subsequent Vapiano restaurants." *Id.* The plaintiff has a good-faith basis for requesting discovery of such evidence, and this evidence could establish whether Vapiano SE's ties with the District are sufficient to show that the company is "doing business" in the District. *See Diamond Chem. Co.,* 268 F. Supp. 2d at 7 ("Ordinarily, a defendant corporation's contacts with a forum may not be attributed to . . . affiliated corporations. An exception exists, however, where affiliated parties are 'alter egos' of a corporation over which the Court has personal jurisdiction; in that case the corporation's contacts may be attributed to the affiliated party for jurisdictional purposes."); *Well-Made Toy Mfg. Corp. v. Lotus Onda Indus. Co.,* No. 02-cv-1151, 2003 U.S. Dist. LEXIS 68, at *16 (S.D.N.Y. Jan. 3, 2003) (in copyright infringement action against a Hong Kong company for direct and contributory infringement arising from foreign company's sale abroad of infringing items to domestic re-seller,

court denied motion to dismiss for lack of subject matter jurisdiction to allow the plaintiff "discovery of facts demonstrating jurisdiction . . . where the facts are peculiarly within the knowledge of the opposing party.").

Although Vapiano SE argues that the plaintiff "has not made a showing sufficient to support her request for jurisdictional discovery," Vapiano SE's Reply, at 8, certain factual allegations compel the Court to allow the plaintiff an opportunity to test this defendant's averments and conduct discovery related to her jurisdictional claims. The plaintiff has supplied as exhibits to her Amended Complaint and opposition papers images of Vapiano restaurants, both domestic and foreign, and of Vapiano websites, including the website of Vapiano SE, in which the plaintiff's Protected Photographs are unmistakably displayed. Am. Compl., ECF No. 11, Ex. 5. The Vapiano restaurants in these images have a consistent design and theme, which appear to include, as plaintiff alleges, the plaintiff's Protected Photographs as a central décor element. Given the uniformity of the restaurants' design, and the fact that plaintiff's Protected Photographs are clearly displayed in multiple locations, the Court naturally hesitates before accepting Vapiano SE's averment that it does not direct or require display of plaintiff's Protected Photographs. In addition, there is evidence of a cross-over of senior management between Vapiano SE and Vapiano International. *See* Am. Compl., Scott H. Christensen Decl., Ex. 2; Pl.'s Opp'n Mot. Dismiss, ECF No. 21, Kelsey A. Schaefer Decl., Ex. 4 (identifying Gregor Gerlach as supervisory Board Chairman of Vapiano SE and CFO of Vapiano International); Pl.'s Opp'n Mem., at 14-15 (identifying other individuals with dual roles in Vapiano SE and the U.S.-based Vapiano affiliates, including: Kent Hahne, "Vapiano SE's President" and President and Chairman of the Board of the U.S.-based Vapiano affiliates; Klaus Rader, one of "Vapiano SE's original founders" and Executive Vice President of the U.S.-based Vapiano affiliates; and Martin Luible, a former Vapiano SE director and Chief Operating Officer of the U.S.-based Vapiano

affiliates.). The plaintiff even asserts that the alleged designer of Vapiano restaurants, Matteo Thun, is "an executive of Vapiano" and that "Plaintiff's Protected Photographs were a part of [his] design of the first Vapiano restaurants." Pl.'s Opp'n Mem., at 5.

Accordingly, the Court grants the plaintiff sixty (60) days to conduct discovery regarding Vapiano SE's ties to the District of Columbia. Until the plaintiff has had an opportunity to conduct discovery, the Court cannot resolve Vapiano SE's motion to dismiss. Vapiano SE's motion to dismiss is therefore denied with leave for this defendant to re-file the motion following completion of jurisdictional discovery. On or before the conclusion of the period of jurisdictional discovery, the plaintiff and Vapiano SE shall submit to the Court an agreed-upon schedule for further briefing on the issues raised by this defendant's motion to dismiss.

## III. VAPIANO SE'S MOTION TO DISMISS CLAIMS OF INFRINGEMENT OCCURING IN FOREIGN VAPIANO RESTAURANTS FOR LACK OF SUBJECT MATTER JURISDICTION

Vapiano SE has moved to dismiss all claims concerning alleged acts of infringement occurring in Vapiano restaurants located outside the United States, arguing that the Court lacks subject matter jurisdiction to hear such allegations not only against Vapiano SE, but against any defendant. The Court concludes that it has subject matter jurisdiction over allegations in Count I and Count II regarding direct, contributory, or vicarious liability under the Copyright Act for infringement occurring in foreign Vapiano restaurants as to defendants Vapiano International and Vapiano USA, but not against Vapiano SE. The Court also has subject matter jurisdiction over plaintiff's allegations against all three defendants in Count III of the Amended Complaint, which alleges that the defendants violated Foreign Copyright Laws.

### A. Standard of Review

Federal courts are fora of limited jurisdiction, only possessing the power authorized by the Constitution and statutes. *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994). "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.* (internal citations omitted). Therefore, when a defendant brings a motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), "the [p]laintiff bears the burden of establishing by a preponderance of the evidence that the Court possesses jurisdiction." *Hollingsworth v. Duff*, 444 F. Supp. 2d 61, 63 (D.D.C. 2006) (citing *Shekoyan v. Sibley Int'l Corp.*, 217 F. Supp. 2d 59, 63 (D.D.C. 2002); *Pitney Bowes, Inc. v. U.S. Postal Serv.*, 27 F. Supp. 2d 15, 19 (D.D.C. 1998)). It is well established that in deciding a motion to dismiss for lack of subject matter jurisdiction a court is not limited to the allegations set forth in the complaint, "but may also consider material outside of the pleadings in its effort to determine whether the court has jurisdiction in the case." *Alliance for Democracy v. FEC*, 362 F. Supp. 2d 138, 142 (D.D.C. 2005); *see also Herbert v. Nat'l Acad. of Sciences*, 974 F.2d 192, 197 (D.C. Cir. 1992). "While the complaint is to be construed liberally, the court need not accept factual inferences drawn by plaintiffs if those inferences are not supported by facts alleged in the complaint, nor must the Court accept plaintiffs' legal conclusions." *Speelman v. United States*, 461 F. Supp. 2d 71, 73 (D.D.C. 2006).

### B. Discussion

The plaintiff asserts three causes of action against the defendants for the alleged infringement of her Protected Photographs. Count I of the plaintiff's Complaint asserts that the defendants are violating Section 501 of the Copyright Act, 17 U.S.C. § 501, by "copying and displaying copies of Plaintiff's Protected Photographs in Vapiano Restaurants in the U.S. and abroad and on Vapiano

Websites." Am. Compl. ¶ 36. Count II of the Complaint alleges that the defendants are liable for contributory and vicarious copyright infringement under the Copyright Act because they "collectively require and direct" the unlawful display of the Protected Photographs in Vapiano Restaurants "as a central part of those restaurants' décor." *Id.* ¶ 48. Count III asserts that the defendants are in violation of Foreign Copyright Laws for infringement of plaintiff's Protected Photographs occurring in Vapiano restaurants outside the United States. *Id.* ¶ 55. Vapiano SE argues that the Court lacks subject matter jurisdiction over any alleged acts of infringement occurring in foreign Vapiano restaurants, under either the Copyright Act, as asserted in Counts I and II of the Amended Complaint, or Foreign Copyright Laws, as asserted in Count III. The Court evaluates the defendant's argument concerning each Count individually.

**1. Count I: The Court Does Not Have Subject Matter Jurisdiction Over Allegations Of Foreign Infringement By Vapiano SE**

Vapiano SE seeks dismissal of Count I to the extent that it alleges violations of the Copyright Act for acts of infringement occurring in any Vapiano restaurant located outside the United States. To the extent that this motion would have the Court dismiss from the lawsuit claims relating to all foreign Vapiano restaurants, it sweeps too broadly on the current record. While infringing activity occurring abroad is not actionable under the Copyright Act, the Court does have subject matter jurisdiction over allegations that copyright infringement *inside* the United States is causing further infringement *outside* the United States. The Amended Complaint alleges that defendants Vapiano International and Vapiano USA committed such predicate acts of infringement, but fails to allege with sufficient specificity that Vapiano SE committed any predicate infringing acts inside the United States that resulted in the display of the Protected Photographs in foreign Vapiano restaurants.

Accordingly, allegations contained in Count I of the Amended Complaint that Vapiano SE is liable for direct infringement under the Copyright Act for foreign acts of infringement are dismissed.[10]

It is well-established that the Copyright Act does not have extraterritorial effect. *Subafilms, Ltd. v. MGM-Pathe Commc'ns Co.,* 24 F.3d 1088, 1095-96 (9th Cir. 1994) ("The 'undisputed axiom,' that the United States' copyright laws have no application to extraterritorial infringement . . . consistently has been reaffirmed." (internal quotations and citations omitted));*Update Art, Inc. v. Modiin Publ'g, Ltd.,* 843 F.2d 67, 73 (2d Cir. 1988); *Robert Stigwood Grp. Ltd. v. O'Reilly*, 530 F.2d 1096, 1101 (2d Cir. 1976) ("Copyright laws do not have extraterritorial operation."); *Armstrong v. Virgin Records*, 91 F. Supp. 2d 628, 634 (S.D.N.Y. 2000) ("As a general principle, it is not seriously disputed that United States copyright laws do not have extraterritorial effect . . ."). Thus, there is no cause of action under the Copyright Act for acts of infringement that occur completely outside the United States. *Subafilms,* 24 F.3d at 1091; *Armstrong*, 91 F. Supp. 2d at 634. Consequently, a foreign actor who engages in or authorizes infringing activity while abroad, and no part of the infringing activity takes place in the United States, does not thereby violate U.S. copyright law and U.S. courts do not have subject matter jurisdiction over claims arising from that foreign activity.

Notwithstanding the general rule barring extraterritorial application of the U.S. Copyright Act, courts have permitted claims under this law when infringement occurring outside the United States is "permitted or initiated by predicate acts of infringement within the United States." *Armstrong*, 91 F. Supp. 2d at 634. This occurs when (1) infringement occurs within the United States, and (2) this act initiates further infringement abroad. *See id.* ("[T]he unauthorized manufacture of infringing goods within the United States for subsequent sale abroad may give rise to a cause of action under the

---

[10] Vapiano SE admits that "it has widely varying involvement" with the 57 overseas restaurants. Vapiano SE's Reply, ECF No. 22, at 2. Given the lack of information about the legal relationship between Vapiano SE and the foreign Vapiano restaurants, on the current record the Court is unable to identify which restaurants in which countries may be affected by the dismissal of this count against Vapiano SE.

Copyright Act, even when the actual sale and distribution of infringing goods occurs outside of the United States proper."); *see also L.A. News Serv. v. Reuters Television Int'l*, 149 F.3d 987, 991-93 (9th Cir. 1998) (en banc), *cert. denied*, 525 U.S. 1141 (1999) (where defendant made unauthorized copies of video footage in New York for retransmission abroad, court held compensatory relief could be awarded under U.S. law for exploitation abroad, as if the exploitation abroad had taken place at home); *Update Art,* 843 F.2d at 73 (stating that while copyright laws do not have extraterritorial application, "there is an exception – when the type of infringement permits further reproduction abroad – such as the unauthorized manufacture of copyright material in the United States."); *In re Outsidewall Tire Litig.*, No. 09-cv-1217, 2010 WL 2929626, at *7-8 (E.D. Va. July 21, 2010) ("[E]xtraterritorial exploitation of a copyright originally infringed inside the United States falls within the jurisdiction of the Copyright Act."); *Compaq Computer Corp. v. Ergonome Inc.,* No. H-97-1026, 2001 U.S. Dist. LEXIS 23485, at *15-16 (S.D. Tex. June 27, 2001) ("[E]xception to the presumption against extraterritoriality" applied when "Compaq allegedly completed the initial, primary infringement within the borders of the United States . . . . As a result, foreign translations of that initial work are subject to this Court's jurisdiction, no matter where those translations may have been eventually made."); *P&D Int'l v. Halsey Publ'n Co*., 672 F. Supp. 1429, 1432-33 (S.D. Fla. 1987) (where defendant copied copyrighted film in Florida and then showed the film on a cruise ship in international waters, court had subject matter jurisdiction "to the extent that part of an 'act' of infringement occurs within this country, although such act be completed in a foreign jurisdiction, those who contributed to the act within the United States may be liable under U.S. copyright law."). Under this extraterritoriality exception, "liability is not based on contributory infringement, but on the theory that the infringing use would have been actionable *even if* the subsequent foreign distribution that stemmed from that use never took place." *Subafilms*, 24 F.3d at 1094; *see generally* Graeme W.

Austin, *Domestic Laws and Foreign Rights: Choice of Law in Transnational Copyright Infringement Litigation,* 23 COLUM.-VLA J. L. & ARTS 1 (1999) (stating that predicate act liability allows "[c]opyright owners who are able to establish that an infringing copy was made within U.S. borders which then facilitated further infringements abroad . . . to secure damage awards that include the profits made by unauthorized foreign exploitation.").

The plaintiff provides two bases for her claim that the infringing displays of the Protected Photographs in foreign Vapiano restaurants fall under the predicate act exception and are therefore actionable under the Copyright Act. First, the plaintiff claims that Vapiano SE solicits franchisees by "enticing them with pictures of its American Vapiano locations, in which Plaintiff's Protected Photographs are clearly visible." Pl.'s Opp'n Mem., at 29. The predicate act of using the American Vapiano locations to entice potential franchisees is then compounded by the defendants' requirement that franchisees "conform to [] a uniform layout" and décor, which includes the unauthorized display of plaintiff's Protected Photographs. *Id.*

The plaintiff's argument suffers both theoretical and timing flaws. The plaintiff essentially argues that infringement inside the United States enticed others outside the United States to open their own restaurants, which, among numerous other requirements, required them to infringe on plaintiff's Protected Photographs. This chain of causation between the alleged "enticing" predicate act of infringement in the United States and the resulting acts of infringement abroad is too attenuated and stretches the predicate act exception too far. *See generally Fun-Damental Too, Ltd. v. Gemmy Industries Corp.*, No. 96-cv-1103, 1996 WL 724734, at *6 (S.D.N.Y. Dec. 17, 1996) (stating that "mere authorization and approval of copyright infringements taking place outside the United States is not a copyright violation and does not create jurisdiction over those extraterritorial acts."). Additionally, although the Amended Complaint states that the defendants "collectively require and

direct . . . that all Vapiano Restaurants around the world prominently display Plaintiff's Protected Photographs," Am. Compl. ¶ 26, there is no allegation in the Amended Complaint that United States-based Vapiano restaurants came first and "somehow enabled or initiated or otherwise led to the installation of her photographs" in the "dozens of Vapiano restaurants in other nations that are under a great variety of ownership." Vapiano SE's Reply, at 9. In order to have enticed the foreign franchisees, the American Vapiano locations must necessarily have come first, but this allegation is missing from the Complaint.

As a second basis for a domestic predicate act to support the extraterritorial reach of the Copyright Act, the plaintiff alleges that "[t]he copies of Plaintiff's Protected Photographs that are being displayed in Vapiano Restaurants are all unlawfully made and provided by Defendants collectively from their *respective* places of business and delivered to their Vapiano Restaurants in the U.S. and abroad." Am. Compl. ¶ 38 (emphasis added). This allegation asserts that the two U.S.-based defendants committed predicate acts of domestic infringement, but there is no such allegation for Vapiano SE. Despite construing the Amended Complaint liberally and affording the plaintiff every reasonable inference, the plaintiff alleges that Vapiano SE unlawfully reproduced plaintiff's Protected Photographs from its "*respective* place of business," which is in Germany. The plaintiff does not allege that Vapiano SE reproduced any of the Protected Photographs in the United States. *Cf. In re Outsidewall Tire Litig.*, 2010 WL 2929626 at *7-8 (allowing claims under the Copyright Act for infringement occurring outside the United States where the infringed product's blueprints were first illegally reproduced and modified inside the United States); *Fun-Damental Too*, 1996 WL 724734 at *4 ("[W]hen an individual makes unauthorized copies of copyrighted material and then sends them out of the country – a court may assert jurisdiction over those foreign acts and a plaintiff may recover damages for the infringing acts that took place extraterritorially.").

The Court is unwilling to subscribe to the plaintiff's theory that unlawful display of the Protected Photos enticed others to open *Vapiano* restaurants, which then led to further infringement abroad. While the Amended Complaint alleges that defendants Vapiano International and Vapiano USA committed infringing acts in the United States,[11] the Amended Complaint does not allege with sufficient specificity that Vapiano SE committed a predicate infringing act in the United States. Thus, the Court dismisses for lack of subject matter jurisdiction Count I of the Amended Complaint against Vapiano SE to the extent that it alleges that Vapiano SE is liable for direct infringement under the Copyright Act for acts of infringement occurring in foreign Vapiano restaurants.[12]

### 2. Count II: The Court Does Not Have Subject Matter Jurisdiction Over Allegations Of Contributory Or Vicarious Liability Under The Copyright Act For Foreign Infringement By Vapiano SE

Count II of the Amended Complaint alleges that the defendants are contributorily and vicariously liable for copyright infringement because they "collectively require and direct" all franchise restaurants to display prominently the plaintiff's Protected Photographs and further facilitate this infringing activity "by providing them with unlawful copies" of the works. Am Compl., ¶¶ 48-49, 52. Vapiano SE has moved to dismiss Count II to the extent that it asserts contributory and vicarious liability under the Copyright Act for acts of infringement occurring in Vapiano restaurants located abroad. The Court agrees with the defendant that the Court lacks subject matter jurisdiction to hear such claims against Vapiano SE because the plaintiff has failed to allege that Vapiano SE took any predicate act of infringement within the United States.

---

[11] Should discovery reveal that defendants Vapiano International and Vapiano USA did not commit any domestic predicate acts of infringement that facilitated the infringement occurring in foreign Vapiano restaurants, then these two U.S.-based defendants may not be held liable under Count I for such foreign infringement.

[12] Vapiano SE remains subject to liability for direct copyright infringement under Count I with respect to domestic Vapiano restaurants should the Court ultimately decide that personal jurisdiction is properly exercised over this defendant.

As stated above, acts of infringement occurring outside the United States are not actionable under the Copyright Act because U.S. copyright law has no extraterritorial effect. *Subafilms,* 24 F.3d at 1095-96; *Update Art,* 843 F.2d at 73; *Armstrong*, 91 F. Supp. 2d. at 634. The plaintiff counters, however, that "the law is unequivocal that a foreign defendant may be held liable under the Copyright Act for its infringing acts committed outside the United States if defendant is alleged to be either contributory or vicariously liable for another's direct act of infringement in the United States." Pl.'s Opp'n Mem., at 29. On this point, the plaintiff is correct. *See Armstrong*, 91 F. Supp. 2d. at 635 ("Where [] acts of infringement occur within the United States and a plaintiff seeks to hold a foreign defendant contributorily or vicariously liable for those acts, it has been held that subject matter jurisdiction may exist, and that the exercise thereof does not conflict with the doctrine of nonextraterritoriality."); *ITSI T.V. Prods. v. California Auth. of Racing Fairs*, 785 F. Supp. 854, 864 (E.D. Cal. 1992), *rev'd in part on other grounds*, 3 F.3d 1289 (9th Cir. 1993) ("A defendant [] may be . . . either contributorily or vicariously liable for another's direct act of infringement. To satisfy the jurisdictional requirement that the defendant commit an act of infringement in the United States, the plaintiff must show only that the direct act of infringement for which defendant is contributorily or vicariously liable occurred in the United States.").

Count II of the Amended Complaint, however, is not limited to contributory and vicarious liability for infringement occurring in the United States and having subsequent affect abroad. Rather, the plaintiff seeks to extend the bounds of contributory and vicarious legal liability under U.S. copyright law extraterritorially to reach infringing activity occurring entirely abroad. Yet, neither of the cases relied upon by the plaintiff stands for such a broad proposition that a foreign defendant may be held contributorily and vicariously liable under the Copyright Act when none of the underlying

acts of infringement occur here. Indeed, this proposition falls squarely within the general rule that the Copyright Act does not apply extraterritorially.

"One infringes contributorily by intentionally inducing or encouraging direct infringement, and infringes vicariously by profiting from direct infringement while declining to exercise a right to stop or limit it." *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005) (internal citations omitted). To establish a claim of contributory copyright infringement, the plaintiff must allege "(1) direct infringement by a third party; (2) knowledge by the defendant that third parties were directly infringing; and (3) substantial participation by the defendant in the infringing activities." *Newborn v. Yahoo!, Inc.*, 391 F. Supp. 2d 181, 186 (D.D.C. 2005) (internal citations and quotations omitted). Vicarious copyright liability may exist when an individual has (1) the 'right and ability' to supervise the infringing activity and (2) a 'direct financial interest' in such activities. *MOB Music Pub. v. Zanzibar on the Waterfront, LLC*, 698 F. Supp. 2d 197, 206 (D.D.C. 2010). Aside from the direct act of infringement, contributory liability essentially requires knowledge and substantial participation, and vicarious liability requires supervision and financial interest; and in neither case can liability attach absent an underlying act of infringement by a third-party. At least one act by the alleged infringer or by the third-party must take place in the United States to trigger the protection of United States law and the subject matter jurisdiction of this Court.

In the present case, if the Court allowed contributory or vicarious liability under the Copyright Act for infringement taking place in foreign Vapiano restaurants, without evidence of any facilitating act in the United States, it would vitiate the well-established principle that the Copyright Act has no application for discrete acts of infringement that take place wholly outside this country. For example, in *Blue Ribbon Pet Products, Inc. v. Rolf C. Hagen (USA) Corp.,* 66 F. Supp. 2d 454, 460 (E.D.N.Y. 1999), a plaintiff sued a Canadian company and its American subsidiary for marketing and selling

infringing items both in the United States and Canada. The Canadian defendant moved to dismiss the copyright infringement suit for lack of subject matter jurisdiction, arguing that it did not infringe U.S. copyrights because all acts it committed occurred outside the United States. *Id.* at 459.[13] The court determined that subject matter jurisdiction was properly exercised over the Canadian defendant's allegedly infringing activity *in the United States*, explaining that "a defendant can be liable for contributory infringement, even for [contributory] acts committed outside the United States, by inducing or contributing to another's infringement occurring in the United States by supplying such other person with the instruments for committing the infringement, provided the defendant knew or should have known that the other would or could reasonably be expected to commit the infringement . . . ." *Id.* at 462. On the other hand, the court found that the Canadian defendant's infringing activity wholly in Canada did not violate United States law. *Id.*; *see also Zimnicki v. Gen. Foam Plastics Corp.*, No. 09-cv-2132, 2010 U.S. Dist. LEXIS 106646, at *6-7 (N.D. Ill. Oct. 4, 2010) (stating that a foreign manufacturer who sold infringing items to a U.S. re-seller could be liable for direct infringement, and for contributory copyright infringement on grounds that foreign activity could have induced or contributed to another's infringement occurring in the United States); *Metzke v. May Dep't Stores Co.,* 878 F. Supp. 756, 761 (W.D. Pa. 1995) (stating that defendant can be contributorily liable under Copyright Act "if it knew or should have known that [foreign infringer's] copies of [plaintiff's] designs would be distributed . . . in the United States.").

As *Blue Ribbon* illustrates, under the theories of contributory and vicarious liability, those accused of such liability are not, without the linked third-party infringement occurring inside the United States, violating United States copyright law. Indeed, while a line of older cases held that

---

[13] *In Blue Ribbon,* the defendant also moved to dismiss the complaint for lack of personal jurisdiction. The Court concluded, however, that personal jurisdiction was proper since the Canadian defendant contributed to or induced the US subsidiary to engage in infringing activity and therefore committed a tortious act under the applicable long-arm statute. *Blue Ribbon,* 66 F. Supp. 2d at 461.

courts have subject matter jurisdiction under U.S. copyright laws when a defendant 'authorizes' another to commit infringing acts even if such acts are committed abroad, "[t]his line of cases has been subsequently repudiated, and it is now generally accepted that there can be no liability under the Copyright Act for authorizing an act that itself could not constitute infringement of rights secured by United States law." *Armstrong,* 91 F. Supp. 2d at 634. Stated more succinctly, "in order to establish jurisdiction over extraterritorial acts, the act taking place in the United States at the very least must itself violate the Copyright Act." *Fun-Damental Too, Ltd.,* 1996 WL 724734 at *5.

In *Subafilms v. MGM-Pathe Communications, Co.*, 24 F.3d 1088 (9th Cir. 1994), the Ninth Circuit sitting *en banc* held that a defendant who, while in the United States, authorized foreign infringing acts did not violate the Copyright Act when none of the actual, or "primary," acts of infringement occurred in the United States. This decision has been followed by other courts, but this Circuit has never addressed the issue. *See Allarcom Pay Television, Ltd. v. Gen. Instrument Corp.*, 69 F.3d 381, 387 (9th Cir. 1995) (authorization of infringement taking place in Canada not actionable under the Copyright Act); *Well-Made Toy Mfg. Corp. v. Lotus Onda Indus. Co.*, No. 02-cv-1151, 2003 U.S. Dist. LEXIS 68, at *14-15 (S.D.N.Y. Jan. 3, 2003) ("It is now generally accepted that there can be no liability under the Copyright Act for merely authorizing an act that could not itself constitute infringement of rights secured by United States law."); *Fun-Damental Too*, 1996 WL 724734 at *6 ("[M]ere authorization and approval of copyright infringements taking place outside the United States is not a copyright violation and does not create jurisdiction over those extraterritorial acts."); *Nat'l Football League v. PrimeTime 24 Joint Venture*, No. 98-cv-3778, 1999 WL 163181, at *4 (S.D.N.Y. Mar. 24, 1999) (indicating the court's acceptance of the 9th Circuit's position in *Subafilms*). The Ninth Circuit's decision in *Subafilms* was premised on the conclusion that violation of a copyright owner's exclusive 'authorization' rights under the Copyright Act, 17 U.S.C. §

106, could only be a form of secondary, rather than direct, infringement. *Subafilms,* 24 F.3d at 1093 ("[T]he addition of the words 'to authorize' in the 1976 Act appears best understood as merely clarifying that the Act contemplates liability for contributory infringement . . . ."). Thus, because acts of infringement taking place wholly outside of the United States are not actionable under the Copyright Act, authorization to commit acts that are not illegal under domestic copyright law cannot result in liability. *See id.* at 1094 ("[W]e do not think Congress intended to hold a party liable for merely 'authorizing' conduct that, had the authorizing party chosen to engage in itself, would have resulted in no liability under the Act."). This interpretation has been criticized for ignoring "economic reality, and the incentives underpinning the Copyright Clause['s] design[] to encourage creation of new works." *Curb v. MCA Records, Inc.,* 898 F. Supp. 586, 594 (M.D. Tenn. 1995) (stating that *Subafilms* "transforms infringement of the authorization right into a requirement of domestic presence by a primary infringer" and makes it so that "a phone call to Nebraska results in liability; [but] the same phone call to France results in riches."); *see also Expediters Int'l. of Wash., Inc. v. Direct Line Cargo Mgmt. Servs., Inc.*, 995 F. Supp. 468, 476-77 (D.N.J. 1998) (stating that "imposing direct liability for authorizing infringement more closely serves the underlying policies of the Copyright Act in this modern era" and "[t]o allow an entity to curtail this right by merely directing its foreign agent to do its 'dirty work' would be to hinder the deterrent effect of the statute and to thwart its underlying purpose.").[14] Notwithstanding the criticism of the results, the *Subafilms* ruling remains

---

[14] *See also* Timothy R. Holbrook, *Territoriality Waning? Patent Infringement for Offering in the United States to Sell an Invention Abroad*, 37 U.C. DAVIS L. REV. 701, 743 (2004) (criticizing *Subafilms*' interpretation of the Copyright Act's 'authorization' right); Phanesh Koneru, Note, *The Right "to Authorize" in U.S. Copyright Law: Questions of Contributory Infringement and Extraterritoriality*, 37 IDEA 87, 96-97 (1996) (stating that while "*Subafilms* is logically plausible, it fails to recognize the significance of the statutory definition of infringer, as well as the overall statutory scheme behind the addition of the phrase 'to authorize.'"); Jason S. Hartley, Recent Development, *Subafilms, Ltd. v. MGM-Pathe Communications Co.: The Ninth Circuit Allows Direct Copyright Infringers to Escape Liability*, 4 TUL. J. INT'L & COMP. L. 345, 354 (1996) (arguing that "[i]n deciding *Subafilms*, the Ninth Circuit has denied justice to the U.S. copyright holder, misconstrued U.S. copyright law, and failed to recognize traditional notions of equity."); John Patrick Kelsh, Note, *Subafilms, Ltd. v. MGM-Pathe Communications Co., the Berne Convention, and the Extraterritorial Application of*

the majority rule that authorization of extraterritorial copyright infringement does not amount to a violation of U.S. copyright law. This Court concludes that *Subafilms* is correct that infringement of a copyright holder's authorization right is a form of secondary liability, which can only exist if an associated act of infringement of the copyright holder's other exclusive rights actually occurs within the United States. *See Capitol Records, Inc. v. Thomas*, 579 F. Supp. 2d 1210, 1221 (D. Minn. 2008) (concluding that "the authorization clause merely provides a statutory foundation for secondary liability, not a means of expanding the scope of direct infringement liability"); *Illustro Sys. Int'l, LLC v. IBM*, No. 06-cv-1969-L, 2007 U.S. Dist. LEXIS 33324, at *38-39 (N.D. Tex. May 4, 2007) (declining to follow minority view in *Curb* and *Expediters Int'l*, the court dismissed copyright claims against defendant IBM because "the infringement occurred entirely outside of the United States," even if IBM authorized infringement by IBM's foreign subsidiary). Consequently, plaintiff's allegation that Vapiano SE is liable for contributory or vicarious infringement under the Copyright Act for acts of infringement occurring in foreign restaurants on grounds that it authorizes or directs such infringement must be dismissed because the plaintiff has failed to allege that Vapiano SE facilitated this foreign infringement with an act of infringement in the United States.

As explained in the preceding discussion of Count I of the Amended Complaint, the plaintiff has not sufficiently alleged that Vapiano SE committed a predicate act of infringement in the United States. Accordingly, the allegation in Count II against Vapiano SE for contributory and vicarious infringement occurring in foreign Vapiano restaurants is dismissed. Moreover, to the extent that Count II seeks to hold defendants Vapiano International and Vapiano USA contributorily and

---

*the Copyright Act*, 90 Nw. U. L. Rev. 1839, 1855 (1996) (criticizing *Subafilms'* interpretation of the Copyright Act's 'authorization' right).

vicariously liable under the Copyright Act for acts of infringement in foreign Vapiano restaurants that are not based on domestic predicate acts of infringement, those allegations are also dismissed.[15]

### 3. Count III: The Court Has Subject Matter Jurisdiction Over Foreign Copyright Claims

In considering Vapiano SE's argument that liability for foreign acts of infringement contained in Count I and II of the Amended Complaint should be dismissed, the Court discussed the extraterritorial reach of U.S. copyright law. The question now before the Court is whether claims that the defendants violated foreign law, specifically the individual copyright laws of fifteen foreign countries, can be asserted in United States courts. Although Vapiano SE argues that "[c]ourts and commentators have split" on this issue, review of the applicable caselaw reveals that, as the plaintiff explains, "Vapiano has grossly overstated any disagreement" and there is "little to no judicial debate." Vapiano SE's Mem. Supp. Mot. Dismiss, at 10; Pl.'s Opp'n Mem., at 31. To the extent that such disagreement does exist, the Court believes that it has the power to adjudicate the claims contained in Count III of the plaintiff's Amended Complaint.

Commentators have maintained that "copyright infringement constitutes a transitory cause of action, and hence, may be adjudicated in the courts of a sovereign other than the one in which the cause of action arose." Melville B. Nimmer, 3 Nimmer on Copyright § 1703 (cited in *London Film Prods. Ltd. v. Intercontinental Commc'ns Inc.*, 580 F. Supp. 47, 48-49 (S.D.N.Y. 1984)); *Armstrong,* 91 F. Supp. 2d at 637; *see also* Paul Goldstein, 3 Goldstein on Copyright § 16.2 (2000). Subscribing to this theory, numerous courts have held that there is "no principled reason to bar, in absolute fashion, copyright claims brought under foreign law for lack of subject matter jurisdiction." *Armstrong,* 91 F. Supp. 2d at 637; *see also Creative Tech., Ltd. v. Aztech Sys. Pte., Ltd.*, 61 F.3d 696, 702 (9th Cir. 1995) ("This Court has recognized the potential of American courts to entertain actions

---

[15] On the current record, the Court is unable to identify which foreign Vapiano restaurants may be affected by the restriction on the scope of Count II as to the two U.S.-based defendants.

under the copyright laws of other nations," citing *Subafilms,* 24 F.3d at 1095 n.10);  *Carell v. Shubert Org., Inc.,* 104 F. Supp. 2d 236, 258 (S.D.N.Y. 2000) ("[A]t this stage in the proceedings, there is no reason to believe that the Court would be foreclosed from applying foreign law to plaintiff's foreign infringement claims."); *Frink America, Inc. v. Champion Road Mach., Ltd.*, 961 F. Supp. 398, 404-05 (N.D.N.Y. 1997) (stating that objections to the court's subject matter jurisdiction "are without merit"); *London Film*, 580 F. Supp. at 49.

The two cases that oppose this view have done so without much discussion. In *ITSI T.V. Prods., Inc. v. California Authority of Racing Fairs*, 785 F. Supp. 854 (E.D. Cal. 1992), the court recognized that while commentators and other courts had concluded that actions for foreign copyright infringement could be brought in U.S. courts, it found "no clear authority" and simply stated that "American courts should be reluctant to enter the bramble bush of ascertaining and applying foreign law without an urgent reason to do so." *Id.* at 866-67. Similarly, in *Music Sales Ltd. v. Charles Dumont & Son, Inc.*, No. 09-cv-1443, 2009 U.S. Dist. LEXIS 97534 (D.N.J. Oct. 19, 2009), the court simply stated that it had "no power to vindicate violations of British law." *Id.* at *18. These cases seemingly recognize that applying foreign law may be difficult, but they do not provide a principled basis for declining review of these claims as a matter of subject matter jurisdiction.

Aside from arguments that application of foreign law would be burdensome, courts have identified one possible complication to adjudicating claims under foreign copyright law, which deserves comment. *London Film,* 580 F. Supp. at 49; *ITSI T.V. Prods.*, 785 F. Supp. at 866 n.19.  In *Vanity Fair Mills v. T. Eaton Co.,* 234 F.2d 633 (2d Cir. 1956), the Second Circuit declined to apply Canadian law in a patent and trademark case because it is not "the province of United States district courts to determine the validity of trademarks which officials of foreign countries have seen fit to grant. To do so would be to welcome conflicts with the administrative and judicial officers of the

Dominion of Canada." *Id.* at 647. Citing *Vanity Fair*, the court in *ITSI T.V.* was in part reluctant to adjudicate claims under foreign law because it was unclear "in any given case [whether] the particular foreign law does have administrative formalities which must be satisfied." *ITSI T.V.*, 785 F. Supp. at 866 n.19. Courts and commentators have noted, however, that "'in adjudicating an infringement action under a foreign copyright law there is . . . no need to pass upon the validity of acts of foreign government officials,' since foreign copyright laws, by and large, do not incorporate administrative formalities which must be satisfied to create or perfect a copyright." *London Film,* 580 F. Supp. at 49 (citing and quoting 3 Nimmer, § 1703). Moreover, administrative formalities "are barred in all nations that adhere to the Berne Convention," *Frink America Inc.,* 961 F. Supp. at 404 (quoting 3 Nimmer, § 1703). In the present case, "all of the other countries where Defendants' Vapiano restaurants are located are [] signatories to the Berne Convention."[16] Am. Compl. ¶ 17. Thus, the Court will not need to evaluate the propriety of foreign administrative acts. *See Frink America Inc.,* 961 F. Supp. at 404 (concluding that the court had subject matter jurisdiction for claims under Canadian copyright law in part because Canada was a signatory of the Berne Convention and the court would therefore not need to determine the validity of foreign administrative formalities).

Having concluded that the Court has the power to adjudicate claims under foreign copyright law, the Court may exert supplemental subject matter jurisdiction over Count III of the plaintiff's Amended Complaint under 28 U.S.C. § 1367(a).[17] Vapiano SE urges the Court to decline

---

[16] These countries are Austria, Croatia, Estonia, Germany, Hungary, the Netherlands, Poland, Romania, Saudi Arabia, Serbia, Sweden, Switzerland, Turkey, the United Arab Emirates, and the United Kingdom. Am. Compl., Ex. 3. All are signatories of the Berne Convention. *See* Contracting Parties, Berne Convention, WORLD INTELLECTUAL PROPERTY ORGANIZATION, http://www.wipo.int/treaties/en/ShowResults.jsp?lang=en&treaty_id=15 (last visited July 20, 2011).

[17] In relevant part, 28 U.S.C. § 1367(a) provides that the district court may invoke supplemental jurisdiction, subject to certain exclusions, "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."

supplemental jurisdiction, pursuant to 28 U.S.C. § 1367(c),[18] because the claims of infringement under foreign law "substantially predominate[] over any claims over which the Court has original jurisdiction," 28 U.S.C. § 1367(c)(2), and, consequently, this case is a "prime candidate for the 'exceptional circumstances' and 'compelling reason' ground for declining supplemental jurisdiction." Vapiano SE Mem. Supp. Mot. Dismiss, at 12; *see* 28 U.S.C. § 1367(c)(4). The Court does not find these arguments persuasive.

Supplemental jurisdiction "is a doctrine of discretion, not a plaintiff's right." *Shekoyan v. Sibley Int'l,* 409 F.3d 414, 423 (D.C. Cir. 2005) (quoting *United Mine Workers v. Gibbs,* 383 U.S. 715, 726 (1966)). In deciding whether to exercise supplemental jurisdiction, the Court considers matters of "judicial economy, convenience and fairness to litigants." *Gibbs,* 383 U.S. at 726. It is "a doctrine of flexibility, designed to allow courts to deal with cases involving pendent claims in the manner that most sensibly accommodates a range of concerns and values." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).

The Court sees no basis for declining supplemental jurisdiction over Count III of the plaintiff's Amended Complaint. Application of the laws of foreign countries will not overly burden the Court and will promote judicial economy. *See London Film*, 580 F. Supp. at 50 ("[T]he need to apply foreign law is not in itself reason to dismiss or transfer the case," citing *Manu Int'l S.A. v. Avon Prods., Inc.,* 641 F.2d 62, 67-68 (2d Cir. 1981)). As the plaintiff states, litigating all of the plaintiff's claims, "which all stem from the same facts[,] . . . in a single forum would significantly reduce litigation costs and simplify discovery." Pl.'s Opp'n Mem., at 32. Thus, there is no reason why, as

---

[18] "The district courts may decline to exercise supplemental jurisdiction . . . if:
    (1) the claim raises a novel or complex question of State law,
    (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
    (3) the district court has dismissed all claims over which it has original jurisdiction, or
    (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction."
28 U.S.C. § 1367(c).

Vapiano SE flippantly suggests, for the plaintiff to "be sent back across the Atlantic to pursue her European and Asian claims."[19] Vapiano SE Mem. Supp. Mot. Dismiss, at 12.

Indeed, the case currently before the Court is analogous to *Boosey & Hawkes Music Publishers, Ltd. v. Walt Disney Co.,* 145 F.3d 481 (2d Cir. 1998). In *Boosey & Hawkes,* the Second Circuit reversed the district court's determination that the existence of foreign copyright claims warranted dismissal of the case on *forum non conveniens* grounds, stating "[w]hile reluctance to apply foreign law is a valid factor favoring dismissal . . . standing alone it does not justify dismissal." *Id.* at 492. In that case, as in this one, "[a] trial here promises to begin and end sooner than elsewhere, and would allow the parties to sort out their rights and obligations in a single proceeding" and defendant's efforts to dismiss the case "seeks to split the suit into 18 parts in 18 nations, complicate the suit, delay it, and render it more expensive." *Id.*; *see also* INTELLECTUAL PROPERTY: PRINCIPLES GOVERNING JURISDICTION, CHOICE OF LAW, AND JUDGMENTS IN TRANSNATIONAL DISPUTES (2008), § 103(2) ("A court shall not dismiss or suspend proceedings merely because the dispute raises questions of foreign law . . . . Courts should not make the presence of foreign law the sole ground for dismissing a claim. Otherwise, the goal of consolidating worldwide claims would be undermined.").

In this case, the plaintiff has asserted valid causes of action in an appropriate forum. It is not apparent that plaintiff's claims under foreign law substantially predominate over any of her other claims, and maintaining supplemental jurisdiction over the plaintiff's claims of infringement

---

[19] Vapiano SE repeatedly notes the fact that the plaintiff is not an American citizen, as if that should afford her less protection than other litigants asserting their rights before this Court. As a signatory to the Berne Convention, the United States is obligated to provide nationals of other Berne Convention signatories the same protections as citizens of this country. *See Golan v. Holder*, 609 F.3d 1076, 1080 (10th Cir. 2010) ("The Berne Convention requires each signatory to provide the same copyright protections to authors in other member countries that it provides to its own authors.").

occurring in foreign nations will certainly expedite resolution of this dispute. Thus, the Court will exercise supplemental jurisdiction over Count III of plaintiff's Amended Complaint.[20]

## IV.  VAPIANO SE'S MOTION TO DISMISS PLAINTIFF'S FOREIGN INFRINGEMENT CLAIMS ON THE GROUND OF *FORUM NON CONVENIENS*

As an alternate basis to dismiss the plaintiff's allegations concerning acts of infringement occurring in Vapiano restaurants outside the United States, Vapiano SE argues that these allegations are not asserted in the proper forum and should therefore be dismissed on grounds of *forum non conveniens*.

The threshold question for a motion to dismiss based on *forum non conveniens* is whether there exists an adequate alternative forum.[21] *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 255 n.22 (1981) ("At the outset of any *forum non conveniens* inquiry, the court must determine whether there exists an alternative forum").  An alternative forum is available when "the entire case and all parties can come within the jurisdiction of that forum." *Saqui v. Pride Cent. Am., LLC*, 595 F.3d 206, 211-12 (5th Cir. 2010).  Moreover, "[d]ismissal would not be appropriate where the alternative forum does not permit litigation of the subject matter of the dispute." *Piper,* 454 U.S. at 255 n.22.

Despite arguing that the Court should dismiss the allegations of foreign infringement due to *forum non conveniens*, Vapiano SE has failed to proffer an alternate forum for the plaintiff's claims, and, thus, as a threshold matter, its motion fails.  Quoting *Pain v. United Technologies Corp.,* 637

---

[20] The Court's exercise of supplemental jurisdiction over Count III of the plaintiff's Amended Complaint as to the claims against Vapiano SE is necessarily contingent on the Court's ability to exercise personal jurisdiction over this defendant. Indeed, "[i]n addition to the requirement that a court have jurisdiction over the subject matter of a claim, a court can impose an enforceable judgment only if it has personal jurisdiction over the parties." *Ross v. Prod. Dev. Corp.*, 736 F. Supp. 285, 288 (D.D.C. 1989) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

[21] In addition to establishing the adequacy of an alternate forum, the party moving for *forum non conveniens* dismissal has the burden of establishing that the balance of relevant private and public interest factors favor dismissal. *Lans v. Adduci Mastriani & Schaumberg L.L.P.*, No. 02-cv-2165, 2011 WL 1957688, at *17 (D.D.C. 2011.).  The Court need not balance the private and public interest factors because Vapiano SE has failed to establish the adequacy of an alternate forum. *Mutambara v. Lufthansa German Airlines*, No. 02-cv-0827, 2003 WL 1846083, at *3-5 (D.D.C. 2003)  (declining to address public and private interest factors because defendant had not demonstrated adequacy of alternate forum and ordering further briefing on the issue).

F.2d 775 (D.C. Cir. 1980) , Vapiano SE states that it is the plaintiff's burden to justify her choice of

forum. Vapiano SE Mem. Supp. Mot. Dismiss, at 13. This reading of *Pain* is incorrect. While *Pain*

suggested that plaintiffs who choose clearly inappropriate forums do not deserve "blind deference,"

the court also reiterated the long held principle that "defendants bear a heavy burden of establishing

that plaintiffs' choice of forum is inappropriate." *Pain,* 637 F.2d at 784; *see also Lans v. Adduci*

*Mastriani & Schaumberg LLP,* No. 02-cv-2165, 2011 WL 1957688, at *17 (D.D.C. 2011) ("[T]he

presumption in favor of the plaintiff's choice of forum can only be overcome when the public and

private interest factors 'clearly point towards trial in the alternative forum,'" quoting *Piper Aircraft*,

454 U.S. at 255); *Stromberg v. Marriott Int'l, Inc.*, 474 F. Supp. 2d 57, 60-61 (D.D.C. 2007)

("[D]efendant has the burden on all aspects of a motion to dismiss on *forum non conveniens* grounds,

including the obligation to establish as a prerequisite that an adequate alternative forum exists.");

*KPMG Fin. Advisory Servs. Ltd. v. Diligence LLC*, No. 05-cv-2204, 2006 WL 335768, at *1 (D.D.C.

Feb. 14, 2006) (same).

 Without specifying an alternative forum, Vapiano SE instead supplies a lengthy list of U.S.

cases in which certain foreign courts were found to be "adequate alternative fora for civil claims."

Vapiano SE Mem. Supp. Mot. Dismiss, at 14. The length of the string cite cannot overcome the

glaring deficiency in the defendant's position. Namely, the defendant does not identify which

particular forum is most appropriate, nor does it state whether it and the other defendants would be

amenable to personal jurisdiction in any other forum. *See Boosey & Hawkes*, 145 F.3d at 491

(reversing district court's dismissal for *forum non conveniens* because the district court failed to

consider whether there were alternative fora capable of adjudicating plaintiff's copyright claim, and

"made no determination whether [the defendant] was subject to jurisdiction in the various countries

where the court anticipated that trial would occur and did not condition dismissal on [defendant's]

consent to jurisdiction in those nations."); *Manifold v. Wolf Coach, Inc.*, 231 F. Supp. 2d 58, 63 (D.D.C. 2002) (denying transfer under *forum non conveniens* doctrine because defendant "never specifically averred which alternative forum is available" and it was unlikely that the implied alternate forum had personal jurisdiction over the defendant). Vapiano SE's motion to dismiss plaintiff's allegations concerning infringement occurring in foreign Vapiano restaurants on grounds of *forum non conveniens* is therefore denied.

## V.    CONCLUSION

For the foregoing reasons, defendant Vapiano SE's motion to dismiss for lack of personal jurisdiction is denied and the plaintiff is granted sixty (60) days to conduct jurisdictional discovery. Vapiano SE's motion to dismiss allegations concerning acts of infringement in Vapiano restaurants located outside the United States, as contained in Counts I, II and III, is denied in part, and granted in part. Allegations in Counts I and II of plaintiff's Amended Complaint asserting Vapiano SE's direct, contributory, and vicarious liability under the Copyright Act for alleged acts of infringement occurring in Vapiano restaurants outside the United States are dismissed. The Court maintains subject matter jurisdiction to hear plaintiff's allegations that defendants Vapiano International and Vapiano USA are directly, contributorily, or vicariously liable under the Copyright Act for infringement taking place in Vapiano restaurants outside the United States. The Court additionally maintains jurisdiction to adjudicate all claims in Count III alleging Vapiano SE, Vapiano International, and Vapiano USA's liability for violations of foreign copyright laws. Vapiano SE's motion to dismiss allegations concerning infringement occurring outside the United States on grounds of *forum non conveniens* is denied. An Order consistent with this Memorandum Opinion will be entered.

**DATED: JULY 20, 2011**                    /s/ *Beryl A. Howell*
                                                          BERYL A. HOWELL
                                                          United States District Judge

46