**FILED**
**NOV 9 - 2012**
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| EWA-MARIE RUNDQUIST, | |
| Plaintiff, | Civil Action No. 09-2207 (BAH) |
| v. | Judge Beryl A. Howell |
| VAPIANO SE f/k/a VAPIANO AG, et al., | FILED UNDER SEAL |
| Defendants. | |

## MEMORANDUM OPINION

The plaintiff Ewa-Marie Rundquist brings this copyright infringement action against the defendants Vapiano SE, Vapiano International LLC, and Vapiano Franchise USA, LLC pursuant to the Copyright Act, 17 U.S.C. §§ 101 *et seq.*, the Berne Convention for the Protection of Literary and Artistic Works, and the copyright laws of a number of foreign countries where the defendants' restaurants are located. The plaintiff, a professional photographer, alleges that the defendants intentionally violated her copyrights on a series of photographs by prominently displaying those photographs in their restaurants. The issues currently before the Court are whether the Court may exercise personal jurisdiction over Vapiano SE—a German affiliate of the other two defendants—and whether the Court should continue to exercise supplemental jurisdiction over the plaintiff's foreign-law copyright claims.[1]

---

[1] The plaintiff has also included in its opposition memorandum of law a request for partial summary judgment on the issue of liability, *see* Am. Mem. of P. & A. in Supp. Pl.'s Mot. Partial Summ. J. & Opp'n Def. Vapiano SE's Renewed Mot. Dismiss ("Pl.'s Opp'n") at 37–42, 45, ECF No. 65, to which the defendants have not replied. Pursuant to the Court's Order, dated February 28, 2012, this case was stayed pending resolution of defendant Vapiano SE's motion to dismiss for lack of personal jurisdiction. *See* ECF No. 61. This means that any briefing on the plaintiff's partial motion for summary judgment remains stayed until the motion to dismiss is resolved. Hence, all defendants will have an opportunity to file a response to the plaintiff's partial summary judgment motion, and the Court does not consider that motion in this opinion because it is not ripe for consideration.

1

I.  **BACKGROUND**

The facts underlying the plaintiff's copyright claims are discussed at length in the Court's prior opinion in this case, *Rundquist v. Vapiano SE*, 798 F. Supp. 2d 102 (D.D.C. 2011), which the Court incorporates by reference here. This opinion will only address the facts that pertain to Vapiano SE's motion to dismiss for lack of personal jurisdiction. Vapiano SE originally moved to dismiss the plaintiff's Complaint for lack of personal jurisdiction in September 2010, and in July 2011 the Court denied that motion without prejudice and granted the plaintiff leave to conduct jurisdictional discovery to determine whether exercising personal jurisdiction would be appropriate. *See id.* at 119–21.[2]

Vapiano SE is a company incorporated in the European Union that operates and franchises a chain of "fresh casual" Italian eateries around the world. *See* First Am. Compl. ("FAC") ¶¶ 5, 18, ECF No. 11.[3] Vapiano SE was originally called Vapiano AG when it was incorporated as a German *aktiengesellschaft* ("AG"), but in 2008 the company reorganized as a European Union *societas europaea* ("SE"). Statement of Undisputed Material Facts in Supp. Pl.'s Mot. Partial Summ. J. ("Pl.'s Facts") ¶ 1, ECF No. 51-3.[4] Vapiano SE was formed by five German businessmen—Gregor Gerlach, Mark Korzilius, Friedmann Findeis, Klaus Rader, and Harald Schrott—in 2002, and they opened their first Vapiano restaurant later that same year in Hamburg, Germany. *See* Mem. of P. & A. in Supp. Renewed Mot. Dismiss by Def. Vapiano SE ("Def.'s Mem.") at 10, ECF No. 48-3.

---

[2] On February 28, 2012, the Court granted defendants Vapiano International and Vapiano Franchise USA's motion for a stay pending resolution of the instant motion to dismiss filed by Vapiano SE. *See* Order dated Feb. 28, 2012, ECF No. 61.

[3] *See also* VAPIANO, About Us, http://www.vapiano.de/frame.php?section=ueberuns&lang=uk (last visited Nov. 9, 2012) ("Defining the future of fresh casual—a new and refreshing niche in the restaurant industry—Vapiano is an innovative European concept . . . .").

[4] Although the defendant entity has gone by more than one name, the Court will hereinafter refer to it as "Vapiano SE."

2

In 2003, Korzilius and Schrott sold out of the company, and a man named Kent Hahne bought into the company through a limited liability company. *Id.* In 2004 and 2005, Vapiano SE opened two more restaurants in Düsseldorf and Frankfurt, respectively. *Id.* at 11. According to Vapiano SE, after the first three restaurants opened in Germany there was a difference of opinion among the owners of the company "about further expansion and the role of Mr. Hahne," who wanted a role in management rather than only being an investor. *Id.* In the spring of 2005, the shareholders of Vapiano SE (Gerlach, Rader, Findeis, and Hahne) formed a new, separate entity called Vapiano International that was to be managed by Hahne and would have the right to "try to expand the concept outside of the German speaking nations." *Id; see also* Decl. of Daniel T. Lloyd in Supp. Pl.'s Response to Vapiano SE's Renewed Mot. Dismiss ("Lloyd Decl.") Ex. 1 at 188:3–4, ECF No. 52-1 (Gerlach noting his desire "to keep SE clean and separate from Mr. Hahne's ambitions to conquer the world"); Def.'s Mem. at 32 (stating that Vapiano International was initially formed "to segregate the risks of expanding outside the German speaking world"). In furtherance of that purpose, Vapiano SE licensed its proprietary restaurant design and operation elements to Vapiano International and granted it the exclusive right to franchise Vapiano restaurants outside Germany, Austria, Switzerland, and Luxembourg. *See* Decl. of Gregory F. Hauser ("Hauser Decl.") Ex. F at 195:16–196:14, ECF No. 48-2.

Vapiano International was initially capitalized by cash contributions from the individual members (Gerlach, Rader, Findeis, and Hahne), and Gerlach and Rader were named officers and directors. Lloyd Decl. Ex. 1, at 202–03; *id.* Ex. 16, at 12, ECF No. 52-16. By the end of 2005, however, Vapiano International began experiencing cash flow problems, at least in part because of its rapid expansion, which prompted Vapiano International to transfer back to Vapiano SE the territorial rights to most of northern and western Europe in exchange for certain services that

Vapiano SE would provide over a period of two years. Hauser Decl. Ex. D at 12–13. These services included "lending employees of Vapiano [SE] or paying for employees of other franchisees to assist with the opening of restaurants in the territory of Vapiano [International]." Def.'s Mem. at 13. Vapiano International signed a number of franchise deals in the United Kingdom and Eastern Europe, but in 2007 and 2009 Vapiano International sold back the territorial rights to the United Kingdom and Eastern Europe, respectively, which "consolidat[ed] the European rights with Vapiano SE" while Vapiano International "continues to hold the rights for the rest of the world." *Id.* at 14; *see* Lloyd Decl. Ex. 16, at 13–14. Altogether, there are currently 106 Vapiano restaurants in twenty-five different nations around the world. *See* Hauser Decl. Ex. C.[5]

From 2008 on, Vapiano SE has experienced numerous shifts in ownership. In 2008, a German limited liability company called Exchange Bio GmbH ("Exchange Bio") bought shares of Vapiano SE, and in 2011 Gerlach transferred his shares in both companies to a German limited partnership he controlled called VAP Leipzig GmbH & Co. KG ("VAP Leipzig"). Lloyd Decl. Ex. 16, at 13–15. Also in 2011, following Gerlach's share transfer to VAP Leipzig, VAP Leipzig bought out the shares in Vapiano SE held by Hahne, Rader, and Findeis, and VAP Leipzig also sold a minority stake in Vapiano SE to a German limited partnership called Mayfair Beteiligungsfonds II GmbH & Co. KG ("Mayfair"). *Id.* at 15. Also, each time any of these ownership changes occurred with respect to Vapiano SE, a parallel ownership change occurred with respect to Vapiano International. *See* Lloyd Decl. Ex. 1, at 190–93 (noting that "changes in ownership of the German Vapiano and the U.S. Vapiano have always been accomplished in

---

[5] Since the submission of evidence in this case, this number appears to have grown to 117 restaurants in twenty-seven different nations, with eight other restaurants in development. *See* VAPIANO, The Vapiano Restaurants, http://vapiano.de/frame.php?section=locations&lang=deen (last visited Nov. 9, 2012). Eighty-seven of the 117 restaurants are located in Europe (not including Turkey), and the remaining thirty are located throughout the rest of the world.

4

parallel"). Thus, the current owners of Vapiano SE and Vapiano International are: VAP Leipzig, Mayfair, and Exchange Bio.

Although Vapiano International and Vapiano SE are separate corporate entities operating in separate global territories, they both engage in essentially the same business: developing Vapiano restaurants. *See, e.g.*, Def.'s Mem. at 34 (stating that Vapiano International and Vapiano SE are "two affiliated companies engaged in the same business in different parts of the world"). Thus, the two companies (including their officers and directors) have worked in concert over the years to ensure that Vapiano restaurants are designed and operated with a certain level of consistency. *See* Reply Mem. of P. & A. in Further Supp. Renewed Mot. Dismiss by Def. Vapiano SE ("Def.'s Reply") at 6, ECF No. 63 ("[T]he Vapiano organization makes enormous effort to have the same design concept executed at every Vapiano restaurant in the world. It is one of the foundations of the business . . . ."); Lloyd Decl. Ex. 16, at 5("As licensor [to Vapiano International], Vapiano AG/SE provides advice and support in dealing with standards and suppliers."). Examples of the two companies' cooperative collaborations include, *inter alia*: (1) sharing an office together in Vienna from 2007–2009, *see* Lloyd Decl. Ex. 16, at 13; (2) Vapiano SE loaning restaurant workers to Vapiano International to help open new restaurants in the United States (including the District of Columbia), *see id.* at 21; (3) Vapiano SE providing loan guarantees and advancing travel-related expenses to Vapiano International, *id.* at 5–6; and (4) Vapiano SE participating in a joint venture that operates one of Vapiano International's franchises in Turkey, *id.* at 7.

The two companies have also had significant overlap in their ownership, officers, and directors. For example, Gerlach owns a large, identical stake in both companies, and he serves as both the part-time CEO of Vapiano SE and the President of Vapiano International. *Id.* at 15;

Lloyd Decl. Ex. 1, at 190–93. Also, Hahne, Rader, and Findeis have all served as members, shareholders, officers, and/or directors in both companies—at times simultaneously. *See id.* Ex. 16, at 15–16. Furthermore, officers and directors of Vapiano SE have, from time to time, traveled to the United States as representatives of either Vapiano SE or Vapiano International. According to Vapiano SE, these travels have only occurred on three occasions. First, Mirko Silz, the former CEO of Vapiano SE, traveled to the United States twice—in October 2008 and November 2009—to meet with the management of one or more of the American Vapiano entities (either Vapiano International or Vapiano Franchise USA). *Id.* at 9. Second, Sven Steinkuhl, Vapiano SE's Director of Finance, also traveled to the United States in November 2009 for meetings with the American Vapiano entities, during which he traveled to one of the Vapiano restaurants in Virginia. *Id.* Finally, Gerlach and Rader attended the grand opening of the Vapiano restaurant in Washington, D.C.'s Chinatown neighborhood on February 25, 2009, purportedly in their capacities as officers and directors of Vapiano International. *Id.*

Pending before the Court is Vapiano SE's motion to dismiss for lack of personal jurisdiction. For the reasons discussed below, the Court denies this motion.

## II.   LEGAL STANDARD

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, the plaintiff has the burden of establishing that personal jurisdiction exists. *FC Inv. Grp. LC v. IFX Markets, Ltd.*, 529 F.3d 1087, 1091 (D.C. Cir. 2008). "A plaintiff seeking to establish specific jurisdiction over a non-resident defendant must establish that specific jurisdiction comports with the forum's long-arm statute, D.C. Code § 13-423(a), and does not violate due process." *Id.* at 1094–95.

The D.C. Circuit has held that "[i]n the absence of an evidentiary hearing, although the plaintiffs retain 'the burden of proving personal jurisdiction, [they] can satisfy that burden with a *prima facie* showing." *Mwani v. bin Laden*, 417 F.3d 1, 7 (D.C. Cir. 2005) (alteration in original) (quoting *Edmond v. U.S. Postal Serv. Gen. Counsel*, 949 F.2d 415, 424 (D.C. Cir. 1991)). The D.C. Circuit has yet to definitively hold, however, what the appropriate legal standard is for motions to dismiss for lack of personal jurisdiction where (1) an evidentiary hearing has not been held, but (2) jurisdictional discovery has occurred. *See Heller v. Nicholas Applegate Capital Mgmt., LLC*, 498 F. Supp. 2d 100, 108 (D.D.C. 2007). The majority of Circuits to address this question have held that when a plaintiff has engaged in jurisdictional discovery, but no evidentiary hearing has been held, a plaintiff need only make a *prima face* case of personal jurisdiction. *See Cossaboon v. Me. Med. Ctr.*, 600 F.3d 25, 31 (1st Cir. 2010); *Quick Techs., Inc. v. Sage Grp. PLC*, 313 F.3d 338, 343–44 (5th Cir. 2002); *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir. 1998); *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996); *Fields v. Sedgwick Associated Risks, Ltd.*, 796 F.2d 299, 301 (9th Cir. 1986); *accord Heller*, 498 F. Supp. 2d at 107–08; *In re Baan Co. Sec. Litig.*, 245 F. Supp. 2d 117, 125 (D.D.C. 2003);. The Ninth Circuit instructively explained the rationale for such a rule:

> Any greater burden such as proof by a preponderance of the evidence would permit a defendant to obtain a dismissal simply by controverting the facts established by a plaintiff through his own affidavits and supporting materials. Thus a plaintiff could not meet a burden of proof requiring a preponderance of the evidence without going beyond the written materials. Accordingly, if a plaintiff's proof is limited to written materials, it is necessary only for these materials to demonstrate facts which support a finding of jurisdiction in order to avoid a motion to dismiss.

*Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977). The plaintiff's showing must include more than mere conclusory statements; it "must instead 'allege specific acts connecting defendant with the forum,' and must back up those allegations with concrete

7

evidence." *In re Baan*, 245 F. Supp. 2d at 125 (citation omitted) (quoting *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 787–88 (D.C. Cir. 1983)).

In the instant case, neither party has requested an evidentiary hearing, and therefore the Court will presume that there are no genuine disputes related to the material jurisdictional facts, and the Court will credit the truth of all of the plaintiff's allegations that are supported by "concrete evidence." *Id.*; *see also* 4 CHARLES ALLEN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1067.6 (3d ed. 2002) ("In challenging specific jurisdiction, a defendant may raise factual issues relevant to personal jurisdiction. If a defendant makes such a challenge, the plaintiff must respond by establishing a basis for personal jurisdiction by presenting at least comparable levels of proof (when comparable levels of proof are put forth the plaintiff receives the benefit of the doubt)."). "[W]hile defendants' evidence is relevant, any conflicts between the parties' versions of the evidence are to be resolved in plaintiffs' favor." *In re Baan*, 245 F. Supp. 2d at 125 (citing 4 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 1067.6); *accord Crane v. N.Y. Zoological Soc'y*, 894 F.2d 454, 456 (D.C. Cir. 1990) ("In determining whether such a [factual] basis [for personal jurisdiction] exists, factual discrepancies appearing in the record must be resolved in favor of the plaintiff.").

## III. DISCUSSION

In support of personal jurisdiction, the plaintiff presents two distinct theories. First, she argues that Vapiano SE is subject to the Court's jurisdiction because it directly made contacts with the District of Columbia that satisfy the D.C. long-arm statute and due process. *See* Pl.'s Opp'n at 2 ("The Court has personal jurisdiction over Vapiano SE because it supplied Ms. Rundquist's photographs for use in the District of Columbia and engaged in a variety of other activities here and in other places regarding the local Vapiano restaurants that misused Ms.

Rundquist's photographs."). The plaintiff also argues that Vapiano SE is subject to the Court's jurisdiction "because Vapiano International is its alter ego and indisputably exploited Ms. Rundquist's photographs in its restaurants in the District of Columbia." *Id.*

As the following discussion reveals, however, the Court is able to decide the defendant's motion on the theory of direct contacts alone. The Court will first discuss the general principles that govern long-arm jurisdiction in the District of Columbia and then will evaluate the particular contacts that the plaintiff claims are sufficient to confer jurisdiction.

### A.  Personal Jurisdiction Principles

Although subject-matter jurisdiction in this case is based upon a federal question (copyright law), the plaintiff "must rely on D.C. law to sue nonresident defendants, since no federal long-arm statute applies." *Edmond*, 949 F.2d at 424. The D.C. long-arm statute provides, in pertinent part, that a court may exercise personal jurisdiction over a person "who acts directly or by an agent, as to a claim for relief arising from the person's":

(1)  transacting any business in the District of Columbia;

(2)  contracting to supply services in the District of Columbia;

(3)  causing tortious injury in the District of Columbia by an act or omission in the District of Columbia; [or]

(4)  causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia . . . .

D.C. CODE § 13-423(a)(1)–(4) (2012).[6] "While the long-arm statute is interpreted broadly and factual disputes are to be resolved in favor of the plaintiff, plaintiff must allege some specific facts evidencing purposeful activity by the defendant in the District of Columbia by which it

---

[6] The D.C. long-arm statute also contains three other bases for exercising specific personal jurisdiction, but none of them are relevant to the facts in the instant case.

9

invoked the benefits and protections of the District's laws." *Atlantigas Corp. v. Nisource, Inc.*, 290 F. Supp. 2d 34, 44 (D.D.C. 2003) (citing *First Chi. Int'l v. United Exch. Co.*, 836 F.2d 1375, 1378 (D.C. Cir. 1988)). The plaintiff argues that Vapiano SE is subject to personal jurisdiction under each of the four subsections of the D.C. long-arm statute listed above for actions that it purposefully directed at the District of Columbia, which relate to the plaintiff's copyright infringement claims.

A Court's exercise of personal jurisdiction must also comport with the Due Process Clause. Due process demands that, in order to exercise jurisdiction over a non-resident defendant, that defendant must "have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted). A defendant has minimum contacts with a forum when the defendant's "conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). "Where a defendant 'purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws,' it submits to the judicial power of an otherwise foreign sovereign to the extent that power is exercised in connection with the defendant's activities touching on the State." *J. McIntrye Mach., Ltd. v. Nicastro*, 131 S. Ct. 2780, 2787–88 (2011) (citation omitted) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). "[W]here the defendant deliberately has engaged in significant activities within a State, or has created continuing obligations between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there . . . ." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475–76 (1985) (citations and internal quotation marks omitted). Where a court seeks

to assert specific jurisdiction over a non-resident defendant, the litigation must have "result[ed] from alleged injuries that arise out of or relate to those activities." *Mwani*, 417 F.3d at 12 (emphasis and internal quotation marks omitted) (quoting *Burger King*, 471 U.S. at 472).

### B. Vapiano SE Transacted Business in the District of Columbia

"The 'transacting any business' clause of the District's long-arm statute provides jurisdiction to the full extent allowed by the Due Process Clause. Thus, the statutory and constitutional jurisdictional questions merge into a single inquiry . . . ." *Heroes, Inc. v. Heroes Found.*, 958 F. Supp. 1, 2 (D.D.C. 1996) (citing *United States v. Ferrara*, 54 F.3d 825, 828 (D.C. Cir. 1995)). In the instant action, the plaintiff's argument that Vapiano SE transacted business in the District of Columbia is based primarily on Vapiano SE's involvement in the design of Vapiano restaurants in the District. *See* Pl.'s Opp'n at 25–27. The plaintiff argues that her copyright infringement claims arise out of this conduct because Vapiano SE's oversight of the restaurants' design led to the plaintiff's allegedly protected photographs being hung in the D.C. restaurants without the plaintiff's permission. *See id.* Specifically, the plaintiff argues that "Vapiano SE mandated that the Vapiano restaurants in the District use Vapiano SE's standard design, which had been prepared for Vapiano SE by Matteo Thun and Karola Groeger, and that this design featured Ms. Rundquist's photographs." *Id.* at 25.

The plaintiff offers two key pieces of evidence in support of personal jurisdiction that have gone uncontested by Vapiano SE. First, the plaintiff offers an e-mail exchange between Groeger (a European architect retained by Vapiano SE), Hahne, and Herbert Heiserman (an American architect who helped design the Vapiano restaurants in the District of Columbia), which reveals that Hahne asked Groeger to send Heiserman a disk of "unseren bilden," which is German for "our pictures." *See* Lloyd Decl. Ex. 53; *see also id.* Ex. 16, at 17. Although Vapiano SE attempts to emphasize Groeger's independence from Vapiano SE, referring to her

11

firm as "outside, independent professionals," *id.* Ex. 16, at 17, the e-mail exchange suggests that Groeger and Vapiano SE coordinated to some degree regarding which photographs would be placed in particular restaurants in the United States. For example, at one point in the e-mail exchange, Heiserman asked Hahne: "[W]ho typically makes that selection/decision [of each photo to be placed within the wall]? Karola [Groeger]? [O]r do you have some input?" *Id.* Ex. 53, at 2. Hahne responded "[K]arola [Groeger] does[,] [and] *we* have certain photos for that." *Id.* (emphasis added). The e-mail exchange is concrete evidence that (1) the black and white photographs sent to Heiserman (which included the plaintiff's allegedly protected photographs) were subject to the control of both Groeger and Vapiano SE; (2) Vapiano SE played some role in selecting the photographs that went on the disc of photographs that contained the photographs at issue in this case; and (3) Groeger was acting as an agent on behalf of Vapiano SE when she transmitted the disc of photographs at Hahne's request. Although Hahne was both a shareholder of Vapiano SE and the president of Vapiano International at the time the e-mail was written, the e-mail was sent from a German e-mail server, and Hahne's signature line indicates a Vapiano address in Bonn, Germany—the international headquarters of Vapiano SE. *See* FAC ¶ 5.

Second, the plaintiff offers a sworn declaration by Heiserman himself.[7] *See* Decl. of Herbert Heiserman ("Heiserman Decl."), ECF No. 52-11. Heiserman avers that he "dealt extensively over a period of approximately four years with Vapiano and its partners" who "were involved in all key decisions regarding [Vapiano's] United States restaurant business." *Id.* ¶¶ 2, 4. He states that Gerlach, Hahne, and Rader "visited the sites in the District of Columbia . . . that became the locations for Vapiano restaurants," they "visited the Vapiano restaurant construction sites in the District of Columbia," and they "later visited the operating restaurants in the District

---

[7] Heiserman's declaration indicates that Vapiano is no longer his client because they "parted ways over a fee dispute." Heiserman Decl. ¶ 11.

12

of Columbia." *Id.* ¶ 4. He further states that "Vapiano's partners" asked him to "assist in converting Vapiano's German design so that it could be used in the United States." *Id.* ¶ 5. Additionally, Vapiano paid for Heiserman to travel to Germany, where he met extensively with the Vapiano partners (Gerlach, Hahne, and Rader) about restaurant design, he visited eight different Vapiano restaurants in Germany "to ensure that [he] understood the German restaurant design," and met with Vapiano's German architects and engineers to "discuss[] all aspects of the design of Vapiano's restaurants." *Id.* ¶¶ 7–8. Finally, Heiserman states in his declaration that "[a] group of high quality black and white photographs," which included the plaintiff's allegedly protected photographs, "was a design feature of Vapiano restaurants." *Id.* ¶ 10. Heiserman "understood that Vapiano had selected the photographs and that the Vapiano restaurants [he] visited and provided design services for used photographs drawn from this pre-selected group." *Id.*

There are, to be sure, a few gaps in Heiserman's declaration. First, he does not explicitly specify whether he was dealing with Gerlach, Hahne, and Rader as partners of Vapiano SE or Vapiano International. Yet, the fact that Heiserman met with the three partners in Germany, where Vapiano SE has its principal place of business, and visited Vapiano SE's restaurants, guided by Vapiano SE's contractors and personnel, leads inexorably to the conclusion that the three partners were, at a minimum, acting as representatives of *both* companies, if not of Vapiano SE alone. Second, Heiserman also does not specify whether Vapiano SE directly facilitated the transmission of the black-and-white photographs to him or whether Vapiano SE merely "selected the photographs." *Id.* ¶ 10. This latter ambiguity, at least, is addressed by the e-mail exchange discussed above, which indicates that Vapiano SE did indeed facilitate the transmission of the photographs. *See* Lloyd Decl. Ex. 53, at 1–2. Heiserman's declaration is persuasive evidence

that Vapiano SE was intimately involved with designing Vapiano restaurants in the District of Columbia and went to great lengths to ensure that the District of Columbia restaurants looked and felt exactly like their German counterparts. Vapiano SE's own admissions bolster this conclusion. *See, e.g.*, Def.'s Reply at 6 (stating that "the Vapiano organization makes enormous effort to have the same design concept executed at every Vapiano restaurant in the world" because "[i]t is one of the foundations of the business"). Additionally, Heiserman's assertions about the numerous trips taken by Gerlach, Hahne, and Rader throughout the construction, development, and operation of the Vapiano restaurants in the District of Columbia are in stark contrast to the much more limited number of trips admitted by Vapiano SE. *Compare* Heiserman Decl. ¶ 4, *with* Lloyd Decl. Ex. 16, at 9. Notably, Vapiano SE does not contest these factual assertions.

Vapiano SE ignores the discrepancy in the number of trips to Washington, D.C., by its principals and responds to the Heiserman Declaration merely by pointing out that "[t]here is neither any evidence that the Vapiano design actually called for or specified Ms. Rundquist's photographs . . . nor that anyone from Vapiano AG/SE and acting on its behalf was responsible for deciding that some would hang in the Vapiano restaurants in the District of Columbia." Def.'s Reply at 17. Vapiano SE does not place much emphasis, if any, on its argument that its contacts with the District of Columbia, described in Heiserman's declaration and other portions of the record, did not amount to purposeful contacts with the District of Columbia. The D.C. Court of Appeals has long "held that '[e]ven a small amount of in-jurisdiction business activity is generally enough to permit the conclusion that a nonresident defendant has transacted business here.'" *Jackson v. Loews Wash. Cinemas, Inc.*, 944 A.2d 1088, 1093 (D.C. 2008) (alteration in original) (quoting *Envtl. Research Int'l, Inc. v. Lockwood Greene Eng'rs, Inc.*, 355 A.2d 808,

811 (D.C. 1976)). "Thus, a single act may be sufficient to constitute transacting business, so long as that contact is voluntary and deliberate, rather than fortuitous." *Id.* (citation and internal quotation marks omitted).

Here, Vapiano SE's provision of employees and other resources to the Vapiano restaurants in the District of Columbia, along with the numerous visits by Gerlach, Hahne, and Rader to the District throughout the construction, development, and operational phases of those restaurants, amount to the transacting of business in the District of Columbia. The Court is persuaded that the shareholder managers of Vapiano SE reached out to the District of Columbia numerous times to further their economic interests,[8] such that Vapiano SE purposefully availed itself of the privileges of conducting activities in the District of Columbia. *See J. Mcintrye*, 131 S. Ct. at 2787–88; *see also* Def.'s Mem. at 33 (noting that "Vapiano SE ultimately benefitted" from Vapiano International's franchising and restaurant operations in the District of Columbia). This "small amount of in-jurisdiction business activity" is sufficient to satisfy D.C. CODE § 13-423(a)(1). *See Jackson*, 944 A.2d at 1093.

### C. The Plaintiff's Copyright Infringement Claims Arise Out of Vapiano SE's Forum Contacts

Rather than focusing on whether it transacted business in the District of Columbia at all, Vapiano SE focuses its argument more narrowly, contending that "[p]laintiff has not identified any transaction of business by Vapiano AG/SE *out of which her copyright infringement claims arise.*" Def.'s Reply at 17 (emphasis added). Vapiano SE's response illuminates the crux of the issue: whether the plaintiff's alleged injuries "aris[e] from" Vapiano SE's activities in

---

[8] There is arguably a factual dispute regarding whether the actions of Gerlach, Hahne, and Rader vis-à-vis the District of Columbia were as members, officers, or directors of Vapiano International or Vapiano SE. To the extent this is a factual dispute, the Court resolves that factual dispute in the plaintiff's favor and concludes that the activities by Gerlach, Hahne, or Rader directed at the District of Columbia were, at least in part, *qua* agents of Vapiano SE. *See Crane*, 894 F.2d at 456; *In re Baan*, 245 F. Supp. 2d at 125

coordinating the design of the Vapiano restaurants in the District of Columbia. *See* D.C. CODE § 13-423(b) ("When jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in this section may be asserted against him."); *see also Mwani*, 417 F.3d at 12. "Some courts have interpreted the phrase 'arise out of' as endorsing a theory of 'but-for' causation, while other courts have required proximate cause to support the exercise of specific jurisdiction." *Dudnikov v. Chalk & Vermillion Fine Arts, Inc.*, 514 F.3d 1063, 1078 (10th Cir. 2008) (citations omitted) (collecting cases). There is also a third approach, which the D.C. Court of Appeals has endorsed in interpreting the D.C. long-arm statute: For a court to have jurisdiction over a defendant, the plaintiff's claim "ha[s] to be related to or substantially connected with" or, put another way, "have some 'discernible relationship' to" the defendant's forum contacts. *Shoppers Food Warehouse v. Moreno*, 746 A.2d 320, 335 (D.C. 2000). The D.C. Court of Appeals has interpreted the phrase "arising from" in D.C. Code § 13-423(b) "flexibly and synonymously with 'relate to' or having a 'substantial connection with,' in the same way that the Supreme Court's due process analysis has used these terms interchangeably." *Id.* "This is not a particularly high threshold" and "[a] claim only fails to have a 'discernible relationship' when it is 'unrelated to the acts forming the basis for personal jurisdiction.'" *IMARK Mktg. Servs., LLC v. Geoplast, S.p.A.*, 753 F. Supp. 2d 141, 157 (D.D.C. 2010) (quoting *Trerotola v. Cotter*, 601 A.2d 60, 64 (D.C. 1991)).[9]

---

[9] In this regard, Vapiano SE vastly overstates the legal standard by asserting that "Plaintiff must show that the copyright infringement in the District of Columbia *arose directly from* some act of Vapiano AG/SE." Def.'s Reply at 16 (emphasis added) (citing *Citadel Inv. Grp., LLC v. Citadel Capital Co.*, 699 F. Supp. 2d 303, 312 n.5 (D.D.C. 2010)). The only case from this Circuit cited by Vapiano SE in support of this proposition, *Citadel Investment Group*, simply does not support Vapiano SE's argument. The footnote from that case cited by Vapiano SE simply observed that the defendant was not amenable to personal jurisdiction by virtue of its contacts with the District of Columbia because "plaintiffs' intellectual property claims do not arise from these contacts." *Citadel*, 699 F. Supp. 2d at 312 n.5. As the discussion above reveals, the phrase "arising from" has been interpreted much more broadly than "arising *directly from*," as Vapiano SE proposes.

16

Whether Vapiano SE's activities in the District of Columbia have any "discernible relationship" with the plaintiff's claims depends upon what connection there was between Vapiano SE's activities directed at the District of Columbia and the plaintiff's allegedly protected photographs being hung in Vapiano restaurants in the District of Columbia. It is here where the facts become murky. Vapiano SE states that the plaintiff's allegedly protected photographs were included in "a pool of black and white photographs," which Vapiano SE vaguely asserts "came into . . . existence at a printer in Germany," which occurred "[a]t some point." Def.'s Mem. at 16. Indeed, Vapiano SE claims to know remarkably little about this pool of photographs that were hung in its restaurants around the world, including who selected the photographs for the pool, where the photographs originated, how copyrighted photographs found their way into the pool, and why Vapiano SE "believed they were all stock photographs." *Id.* at 1. Vapiano SE concedes that its design specifications for all Vapiano restaurants require the inclusion of "black and white photographs generically," and Vapiano SE recommends but does not strictly require that all restaurants order their photographs from the printer pool of photographs. *Id.* at 16–17. It is also clear from the Heiserman Declaration that Vapiano SE imposed its design specifications in developing the Vapiano restaurants in the District of Columbia. *See* Heiserman Decl. ¶¶ 3, 5–10. The Court has discerned from the record so far, however, no direct evidence that Vapiano SE specifically required any particular photographs to be hung. Moreover, the evidence is sparse about the role Vapiano SE played in selecting the photographs that were included in the printer pool of photographs and amounts only to Heiserman's statement that he "understood that Vapiano had selected the photographs," *i.e.*, the "group of high quality black and white photographs." Heiserman Decl. ¶ 10. Nevertheless, it strains credulity to believe that a company so obsessed with the design and look of its restaurants

17

would have played no role whatsoever in selecting the photographs that were included in the printer pool of photographs, although the plaintiff has been unable to garner much evidence on this point.

Even so, the Court concludes that Vapiano SE's forum contacts still bear a "discernible relationship" to the plaintiff's copyright infringement claims because of the manner in which Vapiano SE controlled and directed the design of the Vapiano restaurants in the District of Columbia. As the Heiserman Declaration states, Vapiano SE went to great lengths to ensure that the District of Columbia restaurants looked as similar as possible to the Vapiano restaurants in Germany: (1) flying the D.C. architect to Germany three separate times "to ensure that [he] understood the German restaurant design," (2) bringing the D.C. architect to eight different Vapiano restaurants located in Germany, (3) ensuring that the D.C. architect met with Vapiano SE's architects and engineers to "discuss[] all aspects of the design," and (4) importing furniture, equipment, flooring, and craftsmen from Germany to the District of Columbia. *See* Heiserman Decl. ¶¶ 6–8. Vapiano SE's involvement in the selection and transmission of the allegedly protected photographs, as indicated by the e-mail exchange among Groeger, Hahne, and Heiserman, further supports the conclusion that Vapiano SE's actions were connected to the plaintiff's copyright infringement claims. *See* Lloyd Decl. Ex. 53. Additionally, Vapiano SE's actions directed at the District of Columbia—sending employees to assist with the opening of restaurants and visiting the sites of the restaurants numerous times—were in furtherance of the company's desire to replicate the design of the German restaurants in the District of Columbia. Finally, as Heiserman states, the plaintiff's allegedly protected photographs were hung in the German restaurants that Vapiano SE brought him to visit. *See* Heiserman Decl. ¶ 10. Although the exact manner in which the plaintiff's photographs ended up in the printer pool of

photographs and Vapiano SE's involvement in selecting those photographs remains unclear, the plaintiff has presented sufficient evidence to conclude that Vapiano SE transacted business in the District of Columbia and that those forum contacts have a discernible relationship to the plaintiff's copyright infringement claims. Thus, the Court is satisfied that it may exercise personal jurisdiction over Vapiano SE in accordance with the D.C. long-arm statute and the Due Process Clause.[10]

## IV. CONCLUSION

For the reasons discussed above, the defendant's motion to dismiss will be DENIED. The Court also declines to reconsider its prior ruling that supplemental jurisdiction over the plaintiff's foreign copyright infringement claims is appropriate. In accordance with the Court's prior Order dated February 28, 2012, this resolution of Vapiano SE's Motion to Dismiss also lifts the stay on this action. As a result, the parties shall jointly file, by November 19, 2012, a proposed schedule for the completion of briefing on the plaintiff's Motion for Partial Summary Judgment, ECF No. 51, and for discovery and any further proceedings in this action.

An appropriate Order accompanies this Memorandum Opinion.

Date: November 9, 2012

*/s/ Beryl A. Howell*
BERYL A. HOWELL
United States District Judge

---

[10] Since the Court resolves Vapiano SE's motion to dismiss on other grounds, the Court need not address whether Vapiano SE is subject to jurisdiction under any of the other subsections of the D.C. long-arm statute or whether Vapiano International is the alter ego of Vapiano SE.